## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **DELAWARE HORIZON, INC.**<br>4656 Talmadge Road, Suite 3D<br>Toledo, Ohio. 43623<br><br>AND<br><br>**MAHMOUD AL SAHLI (**INVENTOR**)**<br>4656 Talmadge Road, Suite 3D<br>Toledo, Ohio. 43623<br><br>(As Plaintiffs)<br><br><br>V.<br><br><br>**CENTRAL BANK OF OMAN (CBO)**<br>P.O. Box 1161, Postal Code 112,<br>Al Markazi, Building Number 44<br>Ruwi, CBD- Commercial Business District<br>Sultanate of Oman<br><br>AND,<br><br>**BANK MUSCAT**<br>Bank Muscat Head Office Building No. 120/4<br>Block No.: 311 – Airport Heights<br>Seeb Street No.: 62 P.P.O. Box: 134<br>Postal code 112, Ruwi<br>Sultanate of Oman<br><br>AND,<br><br>**SOHER INTERNATIONAL**<br>Shatti Al Qurum Area, Muscat<br>P.O. Box 44, PC 114<br>Hai Al Mina, Sultanate of Oman<br><br>AND, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No.:<br><br>Judge:<br><br><br>**COMPLAINT WITH DEMAND FOR JURY TRIAL AND INJUNCTION**<br><br><br>Anthony J. Richardson II (0097200)<br>**Law Office of Anthony J. Richardson II, LLC**<br>27457 Holiday Lane, Suite E<br>Perrysburg, OH 43551<br>P: 567-209-2226: F: 567-331-8787<br>Anthony@ajr2law.com<br>*Co-counsel for Plaintiff*<br><br>Anthony J. Glase (0096330)<br>**Law Office of Anthony J. Richardson II, LLC**<br>27457 Holiday Lane, Suite E<br>Perrysburg, OH 43551<br>P: 567-209-2226: F: 567-331-8787<br>Glase@ajr2law.com<br>*Co-counsel for Plaintiff* |

**BANK NIZWA**
Beach One, Building No. 37, Way No. 2601
Block No. 226, Shatti Al Qurum
P.O.Box: 2316, P.C.: 112 Ruwi,
P.O. Box: 1423 – Postal code 133, Al Khuwair
Sultanate of Oman

AND,

**BANK DHOFAR**
Bank Dhofar, Al Bank Al Markazi St.
P.O. Box: 1507 – Postal code 112, Ruwi
Sultanate of Oman

AND,

**NATIONAL BANK OF OMAN**
Head Office: Sultan Qaboos St, Muscat
P.O. Box: 751 – Postal code 112 Ruwi
Sultanate of Oman

AND,

**OMAN ARAB BANK**
Head Office North Al Ghoubra,
P.O. Box: 2240 – Postal code 130
P.O. Box: 2040 – Postal code 112, Ruwi
Sultanate of Oman

AND,

**AL IZZ ISLAMIC BANK**
South Al Ghoubra,Bawshar, Muscat highway
P.O. Box: 753-Postal code 112 Ruwi
Sultanate of Oman

AND,

**AHLI BANK**
Ahli Bank Head Office Building, Al Rumaila Street, Wattaya
P.O. Box 545 PC 116 Mina'a Al Fahal Muscat
Sultanate of Oman

AND,

**THAWANI TECHNOLOGIES**
Al Bashair St, Muscat  P.O. Box 1127
Muscat, Muscat Governorate, 133
Sultanate of Oman

AND,

**OMAN INVESTMENT & FINANCE**
OIFC House, MBD
P.O. Box. 2476,
Ruwi,  Muscat, Oman

AND,

**OMAN NATIONAL ENGINEERING & INVESTMENT**
Al Khuwair, Governorate of Muscat
P.O. Box 1393, PC: 112
Sultanate of Oman

AND,

**GLOBAL FINANCIAL TECHNOLOGY, LLC**
Bousher, Gala, Madinat Al Arfran
P.O. Box 789, Muscat, Sultanate of Oman

(As Defendants)

---

## COMPLAINT FOR PATENT INFRINGEMENT

---

Respecfully,

/S/ Anthony J. Richardson II, Esq.
Anthony J. Richardson II (0097200)
**Law Office of Anthony J. Richardson II, LLC**
*Co-counsel for Plaintiffs*

/S/ Anthony J. Glase, Esq.
Anthony J. Glase (0096330)
**Law Office of Anthony J. Richardson II, LLC**
*Co-counsel for Plaintiffs*

*The Parties*

1) Plaintiff, Delaware Horizon, Incorporated, ("Delaware Horizon") is a corporation organized and existing under the law of the State of Delaware. Plaintiff Delaware Horizon holds its principal place of business in Lucas County, Ohio, at 4656 Talmadge Road, Suite 3D, Toledo, Ohio 43623.

2) Plaintiff, Mahmoud Al Sahli, is an inventor and President or CEO of Delaware Horizon and he resides in Lucas County, Ohio, and has a mailing address located at 4656 Talmadge Road, Suite 3D, Toledo, Ohio. 43623.

3) Defendant Central Bank of Oman (CBO) is a financial institution organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principle place of business or head office located at P.O. Box 1161, Postal Code 112, Al Markazi, Building Number 44, Ruwi, CBD- Commercial Business District, Sultanate of Oman. CBO has representatives in the United States who utilize, mandate, and distribute an allegedly infringing framework, system and product throughout the world, including the United States and specifically, on information and belief, in this district.

4) Defendant Bank Muscat is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Bank Muscat Head Office Building No. 120/4, Block No.: 311 – Airport Heights, Seeb Street No.: 62 P.P.O. Box: 134, Postal code 112, Ruwi, Sultanate of Oman. Bank Muscat has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

5) Defendant Soher International is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of

business located at Shatti Al Qurum Area, Muscat, P.O. Box 44, PC 114, Hai Al Mina, Sultanate of Oman.  Soher International has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

6) Defendant Bank Nizwa is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Beach One, Building No. 37, Way No. 2601, Block No. 226, Shatti Al Qurum, P.O.Box: 2316, P.C.: 112 Ruwi, P.O. Box: 1423 – Postal code 133, Al Khuwair, Sultanate of Oman.  Bank Nizwa has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

7) Defendant Bank Dhofar is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Bank Dhofar, Al Bank Al Markazi Street, P.O. Box: 1507 – Postal code 112, Ruwi, Sultanate of Oman.  Bank Dhofar has representatives in the United States who distribute an allegedly infringing product in the country, including, on information and belief in this district.

8) Defendant National Bank of Oman is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Head Office: Sultan Qaboos St, Muscat, P.O. Box: 751 – Postal code 112 Ruwi, Sultanate of Oman.  National Bank of Oman has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

9) Defendant Oman Arab Bank is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of

business located at Head Office North Al Ghoubra, P.O. Box: 2240 – Postal code 130, P.O. Box: 2040 – Postal code 112, Ruwi, Sultanate of Oman. Oman Arab Bank has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

10) Defendant Al Izz Islamic Bank is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at South Al Ghoubra,Bawshar, Muscat highway, P.O. Box: 753-Postal code 112 Ruwi, Sultanate of Oman. Al Izz Islamic Bank has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

11) Defendant Ahli Bank is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Ahli Bank Head Office Building, Al Rumaila Street, Wattaya, P.O. Box 545 PC 116 Mina'a Al Fahal Muscat, Sultanate of Oman. Ahli Bank has representatives in the United States who distribute an allegedly infringing product throughout the country, including, on information and belief in this district.

12) Defendant Twawani Technologies is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Al Bashair St, Muscat, P.O. Box 1127, Muscat, Muscat Governorate, 133, Sultanate of Oman. Twawani Technologies has representatives in the United States who distribute an allegedly infringing product in the country, including, on information and belief in this district.

13) Defendant Oman Investment & Finance is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at OIFC House, MBD, P.O.Box.No.2476, Ruwi, Muscat, Oman. Oman Investment & Finance has representatives in the United States who distribute an allegedly infringing product in the country, including, on information and belief in this district.

14) Defendant Oman National Engineering & Investment is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Al Khuwair, Governorate of Muscat, PO BOX: 1393, PC: 112, Sultanate of Oman. Oman National Engineering & Investment has representatives in the United States who distribute an allegedly infringing product in the country, including, on information and belief in this district.

15) Defendant Global Financial Technology, LLC, is a corporation organized and existing under the law of the Sultanate of Oman, a foreign nation located in the Middle East, and with a principal place of business located at Bousher, Gala, Madinat AlArgran, P.O. Box 789, Muscat, Sultanate of Oman. Global Financial Technology, LLC has representatives in the United States who distribute an allegedly infringing product in the country, including, on information and belief in this district.

### *Jurisdiction*

16) This is an action for patent infringement and arises under the patent laws of the United States, namely 35 U.S.C. §§ 217, 281-285, among others. Subject matter jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338(a), and further upon 28 U.S.C. § 1332(a) as there is diversity of citizenship between Plaintiffs, as entities in Ohio, and Defendants, as citizens or subjects of a foreign state, and the amount in controversy is in excess of $3,000,000,000.00.

### *Plain Statement of Facts Supporting Claim of Infringement*

17) On July 24, 2018, United States Patent No. 10,032,156 for a "System And Method For Conducting Financial Transactions Using A Mobile Device" ("the 156patent") was duly and truly issued to original inventor, Plaintiff-Mahmoud Al-Sahli, who later assigned the 156patent and related rights to his and his partners' United States company, Plaintiff-Delaware Horizon, Incorporated, which was organized in the state of Delaware on May 29, 2018.

18) As of July 27, 2018, Plaintiff-Mahmoud Al-Sahli granted these exclusive rights to Plaintiff-Delaware Horizon.  A copy of the patent is attached as **Exhibit 1**.

19) On information and belief, Defendants have all made, used, offered for use by its consumers, and distributed within Ohio and elsewhere in the United States, a system and method for conducting financial transactions using a mobile device ("the system and method").

20) Plaintiffs have attached a Claim Chart to this pleading marked as **Exhibit 2**.  This Claim Chart was prepared by a Registered U.S. Patent Attorney and Expert, J. Baron Lesperance, who was independently retained by Plaintiffs to analyze the 156patent and the infringing system and products and determine whether there was alleged infringement.

21) The Claim Chart explores and demonstrates how financial and service institutions are linked to Defendant-CBO's MpClear system, in accordance with the regulatory framework established by CBO for mobile payments.

22) The Mobile Payment Clearing and Switching System (MpClear) system's framework mandates that all financial institutions operating in the Sultanate of Oman, and abroad, including in the United States and specifically in this district, connect to and utilize this system. As a result, no financial or commercial entity is permitted to offer payment, transfer, or

purchase services via mobile channels within the Sultanate or abroad unless it does so through the Defendant-CBO's MpClear system.

23) The system and method of the 156patent, which is protected by law enables users to perform various bank (and other financial) operations and to acquire telecommunications services through the use of personal mobile phones with Subscriber Identity Module (SIM) chips.

24) Specifically, CBO mandates and uses the MpClear system and method, and all other Defendants utilize the system and method in their unique software application offered for download to United States citizens and others abroad through integration with United States companies and technological arrangements such as Apple's AppStore and Google Play Store.

25) Each Defendant has its own software application, known as follows: Bank Muscat offers the 'Bank Muscat Mobile Banking' Application; Sohar International offers the 'Sohar International Bank SAOG' Application; Bank Nizwa offers the 'Bank Nizwa S.A.O.C.' Application; Bank Dhofar offers the 'BankDhofar' Application; National Bank of Oman offers the 'NBO' Application; Oman Arab Bank offers the 'OAB Online' Application; Al Izz Islamic Bank offers the 'Alizz Islamic Digital Bank' Application; Ahli Bank offers the 'Ahlibank M-Bank' Application; Thawanti Technologies offers the 'Thawani Pay' Application; Oman Investment & Finance offers the 'OIFC Khedmad' Application; Oman National Engineering & Investment offers the 'ONEIC Bill & Pay' Application; and, lastly, Global Financial Technology, LLC, offers the 'OMPAY' Application.

26) Defendants, in the respective software application listed above, infringed and is now infringing the claims of the 156patent by making, using, offering for use, or otherwise utilizing the legally protected system and method of the 156patent, as the applications embody the inventions claimed in the 156patent and will continue to do so unless enjoined by the Court.

27) Defendants' infringement is willful and deliberate.  Plaintiffs have given written notice to Defendants of their infringement, yet Defendants continue to make, use, and distribute the software applications that infringe on the 156patent.

**Count One**
(Infringement of U.S. Patent No. 10,032,156)

28) Plaintiffs incorporate all paragraphs in this pleading here by refence.

29) Plaintiffs are the inventor and sole assignee of the 156patent, with exclusive ownership of all substantial rights in the 156patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringement.

30) The 156patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.  The 156patent issued from U.S. Patent Application No. 13/875,028.

31) Defendants have and continue to directly and/or indirectly infringe one or more claims of the 156patent as explored and demonstrated in Claim Chart marked as **Exhibit 2**.

32) On information and belief, Defendants design, develop, manufacture, distribute, sell, offer for sale, mandate use, and/or use the MpClear system and method that infringes on the 156patent, which includes Defendants offering, issuing, providing, registering, facilitating, maintaining, authenticating, validating, processing, directing, controlling, and/or deriving substantial revenue from financial transactions, payments, and other transactions or occurrences for accounts and related services, products, processes and services for Defendants' licensees, issuers, acquirers, partners, merchants, branches, customers, consumers, and clients.

33) Plaintiff incorporates the following information in this pleading from its Claim Chart, Exhibit 2, to demonstrate the infringement on the 156patent:

| 10,032,156<br><br>**Claim Language** | **Central Bank of Oman (CBO) & all financial institutions linked to the system**<br><br>**"MpClear" Accused Product Feature** | **Does CBO's MpClear allegedly satisfy each limitation?** |
|---|---|---|
| <u>**Claim 1:**</u> An apparatus for enabling a user of a **network enabled mobile device** to **effect financial transactions** with a **financial institution** using the **mobile device**, the apparatus comprising: | MpClear enables users to:<br><br>**perform financial transactions**<br><br>using **mobile phones** linked to<br><br>their **bank accounts**<br><br>via **SIM/number-based registration**. | **Yes** |
| a **network enabled mobile device** having associated therewith an **identifier**, wherein said<br><br>network enabled mobile device is associated with a **generic SIM chip** having the identifier associated therewith, wherein the<br><br>**identifier** includes a **phone number** associated with the **generic SIM chip**, and wherein the<br><br>**generic SIM chip lacks** any extrinsic **information** corresponding to the **financial institution**; | **Users register** with MpClear using a **mobile phone number** tied to **a SIM card**.<br><br>The **SIMs are generic** and **do not carry** embedded **bank-specific metadata**. | **Yes** |
| a **computerized system operator** device comprising a **first processor** and a **first customer database** containing **customer information** associated with said **identifier**; | The Central Bank of Oman (CBO), as **system operator**, manages the MpClear core and stores **customer mobile number** mappings in its **database**. | **Yes** |
| a **computerized first financial institution device** comprising a **second processor** and a **second customer database** containing **customer information** relating customer | **Each bank** connected to MpClear maintains its **own systems** and **databases linking phone numbers** to **customer financial account data**. | **Yes** |

| | | |
|---|---|---|
| **financial account information** in association with said **identifier**; | | |
| wherein the network enabled **mobile device** has been **registered** with the system operator device and with the **first financial institution** device for acquiring mobile payment service capabilities, the registration comprising associating said **identifier** with the **first financial institution device** and storing the information in a **first database** accessible to the **system operator device**, and in the **second database** accessible to the **first financial institution device**, and wherein said **second database** is **different** from the **first database** and **is not accessible to the system operator device**; | During **registration**, **MpClear** and **banks** both **store** and **manage** mappings of **phone numbers to accounts.**<br><br>**CBO does not access** bank customer account databases **directly**—this separation is **consistent with Claim 1**. | **Yes** |
| wherein the **system operator device** is configured to: **establish a connection** with the **mobile device**; | **MpClear** initiates **transactions** upon user request via mobile app/SMS, **establishing communication** with CBO infrastructure. | **Yes** |
| receive a **request** for **financial transaction** from the **user** using said **mobile device**, said request including said **identifier** that is associated with the **generic SIM chip**; | User-initiated **requests** are **sent** to **MpClear** with **phone number** as the **key identifier**. | **Yes** |
| automatically **authenticate** said device through said **identifier** stored in the **first database**; | CBO **verifies** that the **phone number** is **registered** and **active** for initiating **transactions**. | **Yes** |
| in response to being authenticated, established a **connection** with the **first financial institution device** and then send a **request** for the **financial transaction** to said **first financial institution device**, said request including said **identifier**; | Once **validated**, MpClear **routes** the **transaction** to the appropriate **bank identified** via the alias. | **Yes** |

| | | |
|---|---|---|
| wherein the **first financial institution device** is configured to: **receive said request** from the **system operator device**; | Participating **banks receive** and **process requests** from **MpClear** on **behalf of** their **users**. | **Yes** |
| use said **identifier** to retrieve from said database information used to **communicate** with said **mobile device** to request user **confirmation** of said **request** received from the **system operator device**; | Banks **confirm** the **user action** using **SMS** or in-app notification **based on the phone number** associated with the account. | **Yes** |
| in response to confirmation by the user, **perform said financial transaction** using said **customer financial account information** associated with said **identifier** in said **second database**; | The **bank executes** the requested **transaction using the user's account** details tied to the **phone number** in its **own system**. | **Yes** |
| wherein **both** the **system operator device** and the **first financial institution device separately use the identifier** that is associated with the **mobile [device]** to **authenticate** the user. | CBO **validates registration** status; the bank **separately verifies identity/account association** using the **same phone number**. | **Yes** |
| **Claim 2:** The apparatus of claim 1, wherein<br><br>said **network enabled mobile device** is associated with a **SIM chip**, and<br><br>the **identifier** is **associated** with the **SIM chip**. | Users in MpClear register using **mobile phones** equipped **with SIM chips**.<br><br>The **mobile number (identifier)** is **tied to** the **SIM** and used **for** all **authentication** and **transaction processes**. | **Yes** |
| **Claim 4:** The apparatus of claim 1, wherein the system operator device is configured to<br><br>**receive** the **request** for the **financial transaction** from the **device** via a **first connection** between the **device** and the **system operator device**,<br><br>the **first connection** established through a **text message** transmitted **by the user** [sic] being the device, and<br><br>wherein the **system operator device** is configured to **automatically authenticate** said **device** by **validating** | MpClear supports:<br><br>**user authentication** using a **PIN** or **password via mobile application** or<br><br>**SMS-based verification** methods.<br><br>It aligns with Claim 4 as **users authenticate** via **credential input** and the **request** can be routed via **secure messaging infrastructure**. | **Yes** |

| a **pin code** or a **password** provided by the user. | | |
|---|---|---|
| **Claim 5:** The apparatus of claim 1, wherein<br><br>the **first financial institution device** is configured to **receive**, in response to **requesting user confirmation** of said **request** received from the **system operator device,**<br><br>the user **confirmation, modification,** or **cancellation** of said financial transaction. | MpClear supports:<br><br>user **interaction** via **mobile banking interfaces** and SMS/OTP confirmation.<br><br><br>Users may **confirm, cancel,** or **decline** actions on pending transaction requests, which are **processed** through the **respective bank's system.** | **Yes** |
| **Claim 6:** The apparatus of claim 1, further comprising:<br><br>a **service providing machine** in communication with said system operator device, wherein<br><br>the **request for the financial transaction received by** the **system operator device from** the **device** is<br><br>a **request for transferring funds** in **payment for a service** provided to the user by said **service providing machine**. | MpClear enables:<br><br>users to make payments to **utility kiosks**, telecom recharge terminals, and **other automated service devices**, which qualify as **service providing machines** under Claim 6.<br><br>These **machines interface** with the **central system** to **receive** and **confirm payments**. | **Yes** |
| **Claim 7:** The apparatus of claim 6, wherein<br><br>the **request for transferring funds** is a request for transferring the funds from a **first account** associated with the **user** at the **first financial institution device** to<br><br>a **second account** associated with the **service providing machine** at a **second financial institution device** different from the **first financial institution device,** wherein<br><br>said **system operator device** is in **communication** with the **first** and **second financial institution devices** and | MpClear enables:<br><br>**transfers** from a **user's account at one bank to**<br><br>a **service provider's account at a different bank.**<br><br>The Central Bank of Oman, as **system operator**,<br><br>maintains **intermediary clearing accounts**<br><br>at **both institutions** and<br><br>**routes** the **funds** between them **accordingly**. | **Yes** |

| | | |
|---|---|---|
| has a **first system operator account** at the **first financial institution device** and<br><br>a **second system operator account** at the **second financial institution device**, and<br><br>the **transferring** of **funds from** said **first account** to said **second account** [is] carries[d] out through<br><br>an **intermediary** of said **first** and **second system operator accounts**. | | |
| <u>**Claim 8:**</u> A system for enabling users of network enabled mobile devices to effect financial transaction by directly accessing financial institution accounts at registered member financial institutions using the mobile devices,<br><br>the **mobile devices** having associated therewith **identifiers** wherein the **mobile devices** are each associated with a corresponding **generic SIM chip** having one of the identifiers associated therewith, wherein<br><br>the **identifier** includes a **phone number** associated with the **generic SIM chip**, and wherein<br><br>the **generic SIM chip** lacks any extrinsic information corresponding to any of the registered member financial institutions, the system comprising:<br><br>a **system operator** comprising a processor, the system operator running operations configured to:<br><br>**receive financial requests** to effect financial transactions from users through said network enabled mobile devices;<br><br>**retrace the identifiers** associated with the received financial requests;<br><br>**authenticate said users** via said identifiers; | MpClear supports:<br><br><br>**mobile-initiated transactions** where users authenticate using **phone numbers** linked to **SIMs**.<br><br>These identifiers are **mapped to participating banks**.<br><br>The **Central Bank of Oman acts as system operator**, routing transaction requests and facilitating financial operations between the mobile user and their bank.<br><br>**Authentication** is performed at both CBO (system operator) and bank level using the same phone number.<br><br>**Communication** between user devices and institutions is secured through pre-configured app infrastructure and national registry mapping. | **Yes** |

| | | |
|---|---|---|
| **map said users** to their respective member financial institutions among said registered member financial institutions using said identifiers;<br><br>**establish communication channels with said users and with said member financial institutions** through corresponding financial institutions having applications compatible with and pre-configured to operate with said system operator; and<br><br>**intermediate between said users and said member financial institutions** using said communication channels in order to facilitate said financial transaction, where said<br><br>intermediate process comprises **exchanging financial information** in an automated and predefined manner; wherein<br><br>both the **system operator** and the **first financial institution** separately use<br><br>the **identifier** that is associated with the mobile device to authenticate the user. | | |
| <u>**Claim 9:**</u> The system as claimed in claim 8, wherein said<br><br>financial requests consist of<br><br>**fund transfer requests** and said<br><br>financial transactions consist of **fund transfers**<br><br>from a **first account** associated with a **first financial institution** to<br><br>a **second account** associated with a **second financial institution different** from said **first financial institution**,<br><br>where said first and second financial institutions are **among said registered member financial institutions**. | MpClear supports:<br><br>interbank transfers between **two different financial institutions** in Oman,<br><br>**both** of which are **part of** the **national payment network**.<br><br>**Users** can initiate fund **transfer requests from one account to another**, and<br><br>these are **processed** through the **Central Bank of Oman's clearing and settlement system**. | **Yes** |

16

| **Claim 10:** The system as claimed in claim 9, wherein said **first account** is associated with a **first user** among said users and said **second account** is associated with a **third party**, where said **first user** uses a **first mobile device** associated with a **first identifier** to effect said **fund transfers**. | MpClear supports: **person-to-person** and **person-to-business** transactions. A **user** with a **registered mobile device** and phone number (**identifier**) can **transfer** funds to **third parties**, including **non-registered recipients and service providers, through their own financial institution**. | **Yes** |
| The system as claimed in claim 10, further comprising: a **first database** storing records mapping each identifier among said identifiers (i) to a **specific user** among said users and (ii) to a **specific financial institution account** associated with a specific financial institution among said registered member financial institutions, wherein said **system operator** is configured to authenticate by inquiring said **first database** to verify whether said identifier **is in the records** upon reception of a **financial request from said first user using said first mobile device**. | MpClear maintains: a **central registry** (first database) managed by the Central Bank of Oman that maps **user identifiers** (phone numbers) to users and their financial institution **accounts**. This database is **queried** during transaction initiation to **verify** and **authenticate** the **user's identity** and **institution**. | **Yes** |
| **Claim 12:** The system as claimed in claim 11, wherein said **intermediation process** by said **system operator** comprises **automatically identifying said first account** by inquiring said first database using said **first identifier** upon **authentication** of the **first user**, and | Upon authenticating a user via their mobile identifier, MpClear retrieves: their **account details** from its database. MpClear then generates a **fund transfer** request that includes the **sender** and | **Yes** |

| | | |
|---|---|---|
| **generating and transmitting** via said communication channels a **fund transfer** request to said **first financial institution**, where<br><br>said **fund transfer request** comprises an **identification** of said **first account**,<br><br>an **identification** of said **second account**, and<br><br>a **specification** of a **requested transfer amount**. | **recipient account information** and<br><br>the **requested amount**,<br><br>which MpClear **transmits** to<br><br>the **originating financial institution for processing**. | |
| **Claim 13:** The system as claimed in claim 12, further comprising:<br><br>a **second database**, wherein said<br><br>**intermediation process** further comprises<br><br>**receiving**, by said **system operator**,<br><br>a **fund transfer commitment** from said **first financial institution**,<br><br>storing said **fund transfer commitment** in said **second database** for future reference, and<br><br>**transmitting** an indication of said **fund transfer commitment**<br><br>**to** said **second financial institution** and<br><br>**to** at least **one of said first user** and said **third party**. | MpClear processes include:<br><br>**receipt of fund transfer commitments** from sending institutions.<br><br>These acknowledgments are **logged** for audit and settlement **reconciliation**, and<br><br>**confirmation messages** are sent to<br><br>**both** receiving **institutions** and<br><br>**end users**<br><br>**confirming** the commitment to **transfer funds**. | **Yes** |
| **Claim 14:** The system as claimed in claim 13, wherein said<br><br>**intermediation process** further comprises<br><br>**generating** a financial **report** in connection with said **fund transfer request**, and<br><br>**storing** said **report** in said second **database** for **further reference**. | MpClear **generates**:<br><br>**audit logs** and<br><br>financial transaction **reports**<br><br>related to **each** processed **fund transfer**.<br><br>These **reports** are **stored centrally** within CBO's system and | **Yes** |

| | | |
|---|---|---|
| | are accessible for **auditing**, **regulatory compliance**, and **future reference**. | |
| **Claim 15:** The system as claimed in claim 10, wherein said<br><br>**third party** is a **second user** among said users. | MpClear supports:<br><br>**peer-to-peer (P2P) fund transfers** between users **within the system**.<br><br>A **first user** can send funds to a **second user**, **both** of whom **are**<br><br>**registered** with their respective **financial institutions** and<br><br>**identified** by **mobile numbers**. | **Yes** |
| **Claim 16:** The system as claimed in claim 10, wherein said<br><br>**system operator** is further **configured to**<br><br>be **connected** to a **service providing machine** associated with said **third party**, and wherein said<br><br>**fund transfers** consist of **payment** for **services provided to the first user** by said **service providing machine**. | MpClear supports:<br><br>**payments** to **kiosks and service machines** for telecom top-ups, utility payments, and government services.<br><br>These **service endpoints** are **connected** to<br><br>the **central operator** and<br><br>**treated as registered endpoints** capable of **receiving fund transfers on behalf** of third-party service providers. | **Yes** |
| **Claim 17:** The system as claimed in claim 10, wherein said<br><br>**system operator** is further configured to<br><br>be **connected** to a **banking terminal** associated with said **third party**, and wherein said<br><br>**fund transfers** are for **settlement** for banknotes **withdrawn** from said banking terminal **by said first user**. | MpClear:<br><br>**connects to** national and commercial **ATM networks** that<br><br>**enable users** to **withdraw funds** from banking terminals.<br><br>These **withdrawals trigger** interbank fund transfer **settlements**, which the Central Bank of Oman (CBO)<br><br>**processes** using **clearing** and **reconciliation accounts**. | **Yes** |
| **Claim 18:** The system as claimed in claim 8, wherein said<br><br>**system operator** has **system operator accounts** in at least some of said **registered member financial institutions**, and said | The **Central Bank of Oman**, as **system operator** for MpClear:<br><br>**holds accounts** with the registered **financial institutions** participating **in the system**. | Yes |

| intermediation process further comprises<br><br>processing said financial transactions by an **intermediary of** at least one of said **system operator accounts**. | **Transactions** are **routed** through these **intermediary accounts**<br><br>**for clearing** and<br><br>**settlement** between **sender** and **recipient banks**. | |

34) On March 20, 2023, Plaintiffs published notice in the public newspaper entitled *Times of Oman*, about the alleged infringement of the 156patent, and all Defendants received notification of the high likelihood of infringement.

35) Defendant, the Central Bank of Oman, through the Chief Executive Officer and governmental agents, threatened "to take action" like in the Country of Jordan, where Plaintiff Mahmoud Al Sahli, his family, and his agent had been threatened to be killed by Jordan officials for attempting to protect rights related to the technology of the 156patent. Defendant, the Central Bank of Oman, sent a letter to memorialize this threat, and that letter is attached as **Exhibit 3**.

36) On information and belief, despite having of the patent and knowledge that it is directly and/or indirectly infringing one or more claims of the 156patent, Defendants have yet continued infringing conduct and disregarded an objectively high likelihood of infringement.

37) Defendants infringing activities related to the 156patent have been, continue to be, done willfully, maliciously, deliberately, with intent and wanton disregard, in bad faith, flagrant, characteristic of pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiffs are entitled under 35 U.S.C. § 284, to enhanced damages up to three times the amount found and assessed.

38) Plaintiffs have been damaged as a result of Defendants' infringing conduct described in this pleading. Defendants are each liable for its own infringement, but can be held jointly and severally liable in an amount that adequately compensates Plaintiffs for Defendants'

intentional and continuous infringement, which, must not be less than a reasonable royalty, together with interest and costs and fees as fixed by this Court under 35 U.S.C. § 284.

### *Conclusion and Prayer for Relief*

39) Plaintiffs are entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful and wonton acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court.

40) Plaintiffs have incurred and will incur attorneys' and expert fees, costs, and expenses in the prosecution of the action.  The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees, costs, and expenses.

41) Plaintiffs respectfully request that this Court finds in their favor and against Defendants, and that the Court grants Plaintiffs the following relief:

    41.1) A judgment that Defendants have infringed the 156patent as alleged, directly and/or indirectly by way of inducing infringement or other infringing conduct of such patent;

    41.2) A judgment for an accounting of damages sustained by Plaintiffs as a result of the acts and conduct of infringement by Defendants;

    41.3) A judgment order mandating Defendants to compensate Plaintiffs for damages under 35 U.S.C. § 284, including up to treble damages as provided in 35 U.S.C. § 284, and any royalties determined to be appropriate;

    41.4) A judgment order mandating that Defendants compensate Plaintiffs with pre-judgment and post-judgment interest on the damages awarded;

    41.5) A judgment order finding the facts of this matter to support that it is an exceptional case where Defendants are required to compensate Plaintiffs for the cost of the action,

including any disbursements, and for attorneys' fees as provided in and by 35 U.S.C.§ 285; and,

41.6) Such judgment order for other relief or action the Court or record later deems just and equitable for Plaintiffs to be made whole.

### *Jury Demand*

42) Plaintiffs request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### *Request for Injunction*

43) Plaintiffs request an injunction to be determined based on evidence derived from discovery at a later date.  Defendants are utilizing Plaintiffs' technology and are seeking to distribute the technology and utilize the MpClear system to eliminate the control and valuation Plaintiffs have and care to place on the patent and the derivative technology.  Defendants are using Plaintiffs' technology and are seeking to distribute the technology and utilize the MpClear system to eliminate the United States dollar as the base currency in the Middle East, and Plaintiffs' desire is to maintain the patent and derivative technology as United States' technology and to maintain the U.S. dollar as the currency dictating value of the patent.

44) Plaintiffs anticipate material and information produced in the matter will reflect how Defendants will seek and receive benefits for which money cannot later compensate Plaintiffs because as the need of and dependency on the technology of the patent grows, the more control of the distribution and sharing in the technology becomes important.

45) Defendants are infringing on the patent by distributing software applications and websites in the United States, and allowing this distribution and use of the patent will continue to harm Plaintiffs and diminish the value of the patent and its derivative technology which is attributed to the patent and covered under the patent's claims.

46) Defendants must be stopped from controlling the distribution and valuation of the patent and the derivative technology covered by the claims of the patent.

Respectfully Submitted,

/S/ Anthony J. Richardson II, Esq.
Anthony J. Richardson II (0097200)
**Law Office of Anthony J. Richardson II, LLC**
27457 Holiday Lane, Suite E
Perrysburg, OH 43551
P: 567-209-2226: F: 567-331-8787
Anthony@ajr2law.com
*Co-counsel for Plaintiffs*

/S/ Anthony J. Glase, Esq.
Anthony J. Glase (0096330)
**Law Office of Anthony J. Richardson II, LLC**
27457 Holiday Lane, Suite E
Perrysburg, OH 43551
P: 567-209-2226: F: 567-331-8787
Glase@ajr2law.com
*Co-counsel for Plaintiff*

## CERTIFICATE OF SERVICE

Plaintiffs provide certification that they will seek waiver of summons and serve copies of this Complaint and all other necessary documents on all Defendants.

/S/ Anthony J. Richardson II, Esq.
Anthony J. Richardson II (0097200)
**Law Office of Anthony J. Richardson II, LLC**
27457 Holiday Lane, Suite E
Perrysburg, OH 43551
P: 567-209-2226: F: 567-331-8787
Anthony@ajr2law.com
*Co-counsel for Plaintiffs*

/S/ Anthony J. Glase, Esq.
Anthony J. Glase (0096330)
**Law Office of Anthony J. Richardson II, LLC**
27457 Holiday Lane, Suite E
Perrysburg, OH 43551
P: 567-209-2226: F: 567-331-8787
Glase@ajr2law.com
*Co-counsel for Plaintiff*



US010032156B2

(12) **United States Patent**
Al-Sahli

(10) Patent No.: **US 10,032,156 B2**
(45) Date of Patent: **Jul. 24, 2018**

(54) **SYSTEM AND METHOD FOR CONDUCTING FINANCIAL TRANSACTIONS USING A MOBILE DEVICE**

(71) Applicant: **Mahmoud Anass Mahmoud Al-Sahli**, Mississauga (CA)

(72) Inventor: **Mahmoud Anass Mahmoud Al-Sahli**, Mississauga (CA)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **13/875,028**

(22) Filed: **May 1, 2013**

(65) **Prior Publication Data**

US 2013/0246265 A1    Sep. 19, 2013

**Related U.S. Application Data**

(63) Continuation of application No. 12/918,462, filed as application No. PCT/CA2008/000935 on May 14, 2008.

(30) **Foreign Application Priority Data**

Mar. 9, 2008    (JO) .................................. P.110/2008

(51) **Int. Cl.**
G06Q 40/00        (2012.01)
G06Q 20/32        (2012.01)
(Continued)

(52) **U.S. Cl.**
CPC ..... *G06Q 20/3229* (2013.01); *G06Q 20/1085* (2013.01); *G06Q 20/18* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ...... G06Q 40/00; G06Q 20/32; G06Q 20/341; G06Q 20/04; G06Q 20/108; G06Q 40/02; G06Q 40/04; G06Q 40/06
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,907,804 A      5/1999 Schroderus et al.
6,142,369 A *  11/2000 Jonstromer .................. 235/380
(Continued)

FOREIGN PATENT DOCUMENTS

WO      2006/056802 A1      6/2006
WO      2004/049093 A1      9/2006
(Continued)

OTHER PUBLICATIONS

Canadian Office Action dated Feb. 15, 2011 in Canadian Application No. 2,716,276.

(Continued)

*Primary Examiner* — Hai Tran
(74) *Attorney, Agent, or Firm* — Hayes Soloway PC

(57) **ABSTRACT**

A Subscriber Identity Module (SIM) Chip Bank system and method for enabling users registered in the system to control their financial and telecommunications resources from their mobile device over a mobile communications network. The system combines mobile network providers and financial services through the use of SIM chips without the need for modifying the users' mobile devices or SIM chip installed thereon. A SIM Chip Bank System Operator (SCB-O) regulates data flow between users, banks, mobile communications service providers, SIM Chip Automated teller Machines and SIM Chip Service Providing Machines through a plurality of communications channels. Upon a user connecting to the SCB-O to request a transaction, the SCB-O connects to the appropriate bank to authorize the requested transaction. Upon successful completion, reports are sent back and forth to users confirming the event.

**18 Claims, 5 Drawing Sheets**



**US 10,032,156 B2**

Page 2

(51) **Int. Cl.**

| | |
|---|---|
| **G06Q 20/10** | (2012.01) |
| **G06Q 20/40** | (2012.01) |
| **G06Q 20/18** | (2012.01) |

(52) **U.S. Cl.**
CPC ............. **G06Q 20/32** (2013.01); **G06Q 20/40** (2013.01); **G06Q 20/4014** (2013.01)

(58) **Field of Classification Search**
USPC ....................................... 705/35–45
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,711,262 | B1 * | 3/2004 | Vatanen | ....................... 380/277 |
| 6,868,391 | B1 * | 3/2005 | Hultgren | ....................... 705/17 |
| 7,258,267 | B2 * | 8/2007 | Choi | ............................ 235/379 |

| | | | | |
|---|---|---|---|---|
| 2007/0050871 | A1 | 3/2007 | Mashhour | |
| 2007/0255662 | A1 * | 11/2007 | Tumminaro | .................... 705/79 |
| 2008/0011825 | A1 * | 1/2008 | Giordano et al. | ............ 235/380 |

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| WO | 2006/095250 | A1 | 9/2006 | |
| WO | WO 2006/095250 | * | 9/2006 | ............. G06Q 20/00 |
| WO | 2008/008735 | A2 | 1/2008 | |

OTHER PUBLICATIONS

Canadian Office Action dated Jan. 12, 2012 in Canadian Application No. 2,716,276.
Canadian Office Action dated Oct. 18, 2012 in Canadian Application No. 2,716,276.
Notice of Allowance dated Feb. 15, 2013 in Canadian Application No. 2,716,276.

* cited by examiner



*FIG. 1*



FIG - 2





Case: 3:25-cv-01127-JJH Doc #: 1 Filed: 06/01/25 30 of 64. PageID #: 30



*FIG_5*



*FIG_6*

US 10,032,156 B2

1

# SYSTEM AND METHOD FOR CONDUCTING FINANCIAL TRANSACTIONS USING A MOBILE DEVICE

## CROSS REFERENCE TO RELATED APPLICATIONS

This application claims priority from U.S. patent application Ser. No. 12/918,462, filed on Aug. 19, 2010, which claims priority from Jordan Application No. P.110/2008, filed on Mar. 9, 2008, in the Jordan Intellectual Property Office, the disclosures of which are incorporated herein by reference in their entirety.

## FIELD OF THE INVENTION

The present invention relates to a Subscriber Identity Module (SIM) Chip Bank System and method. In particular, the system and method enable users to perform various bank (and other financial) operations and to acquire telecommunications services through the use of personal mobile phone with SIM chips installed thereon.

## BACKGROUND OF THE INVENTION

The Internet has revolutionized the manner in which the financial services industry conducts business, in particular by providing customers with permanent accessibility through online and mobile banking business models, which alleviate the need for users to visit their correspondent financial institution. Typically, mobile banking allows customers of a bank to use their mobile devices to access banking services at anytime and from any location through a web browser or using software applications downloaded to the mobile device. Further applications, such as mobile contactless payments or fund transfer between mobile devices, are under development.

Still, one of the main challenges with current mobile banking systems is a lack of interoperability between different technology standards. In particular, a plurality of protocols is currently being used for mobile banking, thus making it difficult for mobile banking applications to connect multiple banks to provide financial services between accounts held within different banks. Also, given the large variety of mobile devices currently on the market, it is a challenge for banks to offer mobile banking solutions on any type of device. In particular, some devices necessitate Wireless Application protocol (WAP) capabilities to have access to a Uniform Resource Locator (URL) of the corresponding banking server, while others require installation of software applications on the mobile device (thus requiring the device to have relatively large memory capacity) or even complete replacement of the mobile device's Subscriber Identity Module (SIM) card with extended function SIM cards. In addition, most prior art banking systems require service providers to be equipped with Point-Of-Sale (POS) terminals to confirm the occurrence of a transaction. Other systems necessitate special chips to be integrated in the mobile devices to enable users to remotely access Automated Teller Machines (ATMs), POS terminals and the like, which are in turn equipped with SIM card readers. As a result, the complexity of the overall system is significantly increased. Moreover, strong security concerns arise as financial transactions are executed from remote locations.

What is therefore needed, and an object of the present invention, is a simplified and efficient SIM chip banking

2

system that enables users to control their financial and telecommunications resources from their mobile device.

## SUMMARY OF THE INVENTION

In order to address the above and other drawbacks, there is disclosed a method for enabling a user of a network enabled mobile device and having an account at a bank to effect financial transactions by directly accessing the account over a wireless network, the mobile device having associated therewith an identifier. The method comprises registering the mobile device with the bank for acquiring mobile payment capabilities, the registering comprising associating the identifier with the account, providing a system operator in communication with the bank, establishing a connection between the mobile device and the system operator, requesting a financial transaction using the account via the connection, the system operator authenticating the user through the identifier and upon authentication directing the request to the bank, and the bank communicating with the user for confirming the request prior to effecting the financial transaction.

There is also disclosed a system for enabling a user of a network enabled mobile device and having an account at a bank to effect financial transactions by directly accessing the account over a wireless network. The mobile device has associated therewith an identifier and has been registered with the bank for acquiring mobile payment service capabilities, the registration comprising associating the identifier with the account. The system comprises a system operator in communication with the bank, and a connection between the mobile device and the system operator. When the user requests a financial transaction using the account via the connection, the system operator authenticates the user through the identifier and upon authentication directs the request to the bank, the bank communicating with the user for confirming the request prior to effecting the financial transaction.

Other objects, advantages and features of the present invention will become more apparent upon reading the following non-restrictive description of specific embodiments thereof, given by way of example only with reference to the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

In the appended drawings:

FIG. 1 is a schematic diagram of a Subscriber Identity Module SIM Chip Bank system in accordance with an illustrative embodiment of the present invention;

FIG. 2 is a detailed schematic diagram of a Subscriber Identity Module SIM Chip Bank system in accordance with an illustrative embodiment of the present invention;

FIG. 3 is a flowchart of a method implemented in a Subscriber Identity Module SIM Chip Bank system in accordance with an illustrative embodiment of the present invention;

FIG. 4 is a flowchart of financial transaction process implemented in a Subscriber Identity Module SIM Chip Bank system in accordance with an illustrative embodiment of the present invention;

FIG. 5 is a schematic diagram of a Subscriber Identity Module SIM Chip Bank system Automated Teller Machine in accordance with an illustrative embodiment of the present invention; and

US 10,032,156 B2

3

FIG. **6** is a schematic diagram of a Subscriber Identity Module SIM Chip Service Providing Machine in accordance with an illustrative embodiment of the present invention.

DETAILED DESCRIPTION OF THE
ILLUSTRATIVE EMBODIMENTS

The present invention is illustrated in further details by the following non-limiting examples which are illustrated with respect to banks. However a person skilled in the art should appreciate that the same system and method are applicable for any financial institution (and not necessarily a bank) providing user accounts.

Referring now to FIG. **1**, and in accordance with an illustrative embodiment of the present invention, a Subscriber Identity Module Subscriber Identity Module (SIM) Chip Bank system (SCB-system), generally referred to using the reference numeral **10**, will now be described. The SCB-system **10** comprises a SIM Chip Bank System Operator (SCB-O) **12** in communication with a plurality (illustratively two (2)) of users as in **14₁**, **14₂**, banks (or other financial institutions) as in **16₁**, **16₂**, and wireless communication network providers (e.g. operator systems using the Global System for Mobile communications (GSM) standard) as in **18₁**, **18₂** for enabling the users as in **14₁**, **14₂** to remotely effect financial transactions as well as access telecommunication services through their network enabled mobile devices (references **24₁** and **24₂** in FIG. **2**). In addition, the SCB-system **10** further enables users as in **14₁**, **14₂** to access banking (or other financial institution-related) terminals as in **20**, such as an SCB-system Automated Teller Machine (SC-ATM), to perform withdrawals of banknotes, cash transfers, or the like through the GSM networks as in **18₁**, **18₂** using the mobile devices **24₁**, **24₂**. The system **10** further allows communication with SIM Chip Service Providing Machines (SCSPMs) as in **22**, which provide users with a plurality of services such as beverage and food vending or fuel pumping.

Referring now to FIG. **2** in addition to FIG. **1**, the mobile devices **24₁**, **24₂** illustratively include cellular phones, Personal Digital Assistants (PDAs), smart phones, and the like, which are equipped with a SIM chip (not shown). To access services of the SCB-system **10**, the user **14₁**, **14₂** illustratively registers with the SCB-O **12** for the services by registering the mobile device **24₁**, **24₂** (by registering a unique identifier related to the mobile device) and/or the unique identifier associated with the device's SIM chip (for example, the MSISDN or phone number associated with the SIM chip). This advantageously enables users in **14₁**, **14₂** to control their financial and telecommunication resources via their personal mobile device as in **24₁**, **24₂** without having to modify either the mobile device as in **24₁**, **24₂** or the SIM chip. In this optic, users do not need to store financial information or any other extrinsic information and/or identifiers on the mobile device and/or the SIM chip. The registration process comprises registering the mobile device and/or SIM chip unique identifier with the system operator and with the financial institution (i.e. bank) for acquiring mobile payment capabilities. The registration with the system operator and the financial institution comprises associating the unique mobile and/or SIM chip identifier with the user, his/her financial institution and financial (bank) account and storing the information in the SCB-O Customer Database accessible to the system operator (**38**) and the SCB-O Customer Database accessible to the first bank (**48**). The SIM chip/mobile device identifier along with the user identity user financial (bank) account can be stored in both databases **38** and **48**. Preferably, the registration at

4

the system operator consists of registering the SIM chip and/or mobile identifier along with an indication of the user financial institution, and the registration at the financial institution (bank) consists of registering the SIM chip and/or the mobile device identifier in association with the user identity to which the financial (bank) account is mapped. In doing so, the (financial) bank account information (which is considered sensitive information) remains confidential between the user and his/her financial institution without sharing it with the system operator. However, a person skilled in the art should appreciate that the registration process can be carried out in a plurality of ways in such a manner to permit the system operator and the financial institution (i.e. bank) to ultimately associate the SIM chip and/or mobile identifier with the user financial account. The financial requests are initiated by the users using the mobile devices and comprise details about the desired financial transaction to conduct (e.g. transfer of US$ 3000 to RBC, account number 53254114563). Referring now to FIG. **2**, the SCB-O **12** illustratively comprises an authentication system **26**, an automatic answering system **28**, such as an Interactive Voice Response (IVR) system, a customer service manager system **30**, a services risk monitoring system **32** and an intra-connection services system **34**, all of which are connected via suitable communications means (not shown) such as a local area network (LAN) or the like. As illustrated in FIGS. **2** and **3**, the authentication system **26** illustratively receives incoming communications (e.g. voice calls over GSM call lines as in **36** or incoming data such as text messages or web requests or the like) from the mobile devices as in **24₁**, **24₂** of users **14₁**, **14₂** wishing to access the financial services. After verifying the identity of the mobile devices as in **24₁**, **24₂**, the authentication system **26** diverts (via a switch or the like, not shown) the incoming calls to the appropriate system. The verification is carried out by determining the mobile phone and/or SIM chip used to initiate the communication by tracing out the SIM chip and/or mobile unique identifier used to initiate the communication. Equipments configured to trace out the SIM chip and/or mobile unique identifiers are well known in the art. Examples of said equipments comprise Equipment Identity Registers and generic calling switches provided by Ericsson, Nortel and Panasonic who have a built systems to identify any calling number (Caller ID Service).

As illustrated in FIGS. **2** and **3**, if the user **14₁** is not successfully authenticated (i.e. the mobile device **24₁** is not registered), the call is directed to the customer service manager system **30**, which handles customer service issues (e.g. unauthorized access, troubleshooting, etc.) arising in the SCB-system **10**. For this purpose, the customer service management system **30** illustratively comprises a plurality of SCB-O application servers (not shown) and is connected to an SCB-O customer database **38** having stored therein information related to users (preferably, SIM chip/mobile unique identifier and an indication of the corresponding financial institution) as in **14₁**, **14₂** registered with the system **10**. Alternatively, if the user **14₁**, **14₂** is successfully authenticated (i.e. the identifier associated with the device's SIM chip matches the information stored in the SCB-O customer database **38**), the user is requested to specify the desired financial transaction. In the preferred embodiment, the call is transferred to the IVR system **28**. The IVR system **28** illustratively comprises a plurality of IVR servers (not shown) and is connected to an IVR repository database **40**, which contains information (i.e. financial transactions available to users) which are presented to users as in **14₁**, **14₂** in a form of a menu for directing the latter to the desired

US 10,032,156 B2

5

requested service, as discussed in further detail herein below. Alternatively, when the communication initiated by the user is essentially data (such as a text message), the user can specify upfront in the message the financial transaction desired which is only processed by the financial operator if the user is successfully authenticated. In another alternative option, the user is given the opportunity of specifying the financial transaction only when he/she is successfully authenticated.

Still referring to FIG. 2, once the users $14_1$, $14_2$ have been authenticated and directed to the desired requested service, the intra-connection services system 34 is used to direct the flow of transactions and orders via a router (not shown) between the banks (or financial institutions) as in $16_1$, $16_2$, the GSM providers as in $18_1$, $18_2$, the SC-ATM 20, the SCSPM 22 and the authorized users as in $14_1$, $14_2$. Illustratively, transactions and orders are transmitted by the intra-connection services system 34 to the financial institutions (banks) as in $16_1$, $16_2$ and GSM providers as in $18_1$, $18_2$ over secure leased Internet connections as in 42 (e.g. using a Secure Sockets Layer (SSL) protocol) or any other suitable means of connection and to the SC-ATM 20 and/or SCSPM 22 via the GSM call lines as in 36. The SCB-O transmits to the financial institution the SIM chip/mobile unique identifier traced out by the authentication system and the financial transaction desired to be conducted by the user. Security is further implemented by the services risk monitoring system 32, which monitors transactions effected by the users as in $14_1$, $14_2$ to block and prevent fraud.

Still referring to FIG. 2, the financial institutions (banks) as in $16_1$, $16_2$ illustratively each comprise a bank integration services system 44, which communicates with the intra-connection services system 34 of the SCB-O 12 to receive transaction orders and respond with the requested transactions. Illustratively, each bank integration services system 44 comprises an extra integration system 45, which is part of the integration process performed by the financial institution (bank) $16_1$, $16_2$. For this purpose, once transactions and orders are received from the SCB-O 12 via the connections as in 42, each extra integration system 45 establishes a communication channel (or Confirmation Request) 43 between a financial institution (bank) $16_1$, $16_2$ and a mobile device $24_1$, $24_2$ of a user $14_1$, $14_2$ wishing to access the services. This is done once the bank determines if said mobile device is a registered mobile device by inquiring the SCB-O Database (48) accessible to the bank for determining if there is a match with the SIM chip identifier received from the system operator. The communication with the user is illustratively through any suitable communication means (e.g. IVR, Short Message Service (SMS), or Multimedia Messaging Service (MMS)) and provides a customer $14_1$, $14_2$ contacted by a financial institution (bank) $24_1$, $24_2$ with a choice between confirming, modifying or cancelling the transaction order prior to processing thereof. This also comprises a further authentication of the user.

Still referring to FIG. 2, each financial institution (bank) $16_1$, $16_2$ further comprises a customer services management system 46 connected to a local SCB-O customer database 48 that holds customer information (i.e. SIM chip identifiers and corresponding bank account information). The customer services management system 46 illustratively retrieves the stored customer information to identify a user $14_1$, $14_2$ requesting a specific financial transaction, as relayed by the SCB-O 12. Upon identifying and authenticating the user $14_1$, $14_2$, transactions and/or other services to the corresponding financial account of the user $14_1$, $14_2$ are then issued by the financial institution (bank) $16_1$, $16_2$. The

6

financial institution (bank) $16_1$ (or alternatively the financial institution (bank) $16_2$) further comprises a customer data integration and registration system 50 that allows the financial institution (bank) $16_1$ to register new users as in $14_1$, $14_2$ (upon request from the customer services management 30 of the SCB-O, for example). A core bank integration system 52 is further provided at the financial institution (bank) $16_2$ in the event where the financial institutions (banks) $16_1$, $16_2$ are linked via a financial network 54 that enables direct financial transactions and services between financial accounts held in both financial institutions (banks) $16_1$, $16_2$, as will be discussed further herein below.

Still referring to FIG. 2, the GSM operator systems as in $18_1$, $18_2$ illustratively each comprise a GSM operator integration services system 56, which communicates with the intra-connection services system 34 of the SCB-O 12 to receive transaction orders and respond with the requested transactions. For example, the GSM operator systems as in $18_1$, $18_2$ obtain customer information associated with the users as in $14_1$, $14_2$ and assess the GSM number validity of the mobile devices as in $24_1$, $24_2$. Similarly to the financial transaction systems as in $16_1$, $16_2$, the GSM operator systems as in $18_1$, $18_2$ illustratively comprise a customer services management system 58 connected to a local SCB-O customer database 60 for providing requested services to authenticated users as in $14_1$, $14_2$. The GSM operator systems as in $18_1$, $18_2$ further comprise a customer data integration and registration system 62 that similarly allows to register new customers as in $14_1$, $14_2$.

Still referring to FIG. 2, the SC-ATM system 20 and the SCSPM 22 similarly illustratively comprise a GSM operator integration services system 64, which communicates with the SCB-O 12 to obtain transaction orders through voice and visual validations for example, a customer services management system 66 connected to a SCB-O customer database 68 and a customer registration system 70, all of which perform functions similar to the functions of the customer services management system 58, the SCB-O customer database 60, and the customer data integration and registration system 62 described herein above.

Referring now to FIG. 3 in addition to FIG. 2, provided the GSM provider system $18_1$, $18_2$ is affiliated with the SCB-system 10, there is no need for a user $14_1$, $14_2$ to replace or modify the SIM chip currently installed on the mobile device $24_1$, $24_2$ as the SCB-system 10 allows any SIM chip to be registered in the system 10 regardless of the type of mobile device $24_1$, $24_2$ used. Illustratively, upon registration with the SCB-system 10 through the financial institution (bank) $16_1$, $16_2$ that the user $14_1$, $14_2$ is affiliated with, the SIM chip, which is illustratively either pre-paid and/or post-paid, is associated with the financial account held by the registered user $14_1$, $14_2$ at the financial institution (bank) $16_1$, $16_2$. Illustratively, the unique mobile phone number associated with the mobile device $24_1$, $24_2$ and stored on the SIM chip is used to identify the user $14_1$, $14_2$ at the SCB-O 12 (together with an associated password, for example a number of digits such as a PIN, and/or letters, and/or voice recognition). This unique identity ensures that the user $14_1$, $14_2$ can securely access the services provided by the system 10. In this manner, a SIM chip may illustratively be identified with the same unique identification at the SCB-O 12, the financial institutions (banks) as in $16_1$, $16_2$, and the GSM providers as in $18_1$, $18_2$.

Still referring to FIG. 3 in addition to FIG. 2, more than one mobile phone number may also belong to the same user $14_1$, $14_2$ and mobile device $24_1$, $24_2$ and in this case, the user holds more than one SIM chip, with each SIM chip associ-

US 10,032,156 B2

7

ated with a unique mobile phone number. Each mobile phone number is 10 then subsequently identified by the SCB-O 12 and associated to the financial account of the user 14₁, 14₂. Accordingly, more than one SIM chip may be assigned by the SCB-system 10 to a single account (as a given user may have one or more mobile phones with unique SIM cards in his possession), with the degree of access granted by any number of SIM chips being pre-determined. In this manner, the user 14₁, 14₂ would illustratively be provided access to varied services (e.g. effect different financial transactions as described herein above) depending on the SIM chip installed on the mobile device 24₁, 24₂. For example, extra SIM chips may be allowed to connect to the services of the SCB-system 10 using the main identification yet be limited in function to a predetermined set of transactions (e.g. allowed to receive payment reports only but having no access to other services). Updated detailed financial and GSM information corresponding to a given identity is illustratively made readily available and synchronized in the SCB-system 10 through the leased line connections as in 42 between the SCB-O 12, the financial institutions (banks) as in 16₁, 16₂, and the GSM operator systems as in 18₁, 18₂.

Still referring to FIG. 3 in addition to FIG. 2, a method 100 for handling financial transactions between registered users (references 14₁ and 14₂ in FIG. 1) according to an illustrative embodiment of the present invention will now be described. Illustratively, a user 14₁ having an active financial account held with a financial institution (bank) 16₁ providing SCB services connects to the SCB-system 10 at 102 using the unique identifier (i.e. the mobile phone number) associated with the registered SIM chip. The connection is illustratively implemented by the mobile device 24₁ initiating a communication at 104 with the SCB-O 12 using the GSM call line 36 to dial the publicly known customer service number of the SCB-O 12. The communication is a combined voice and data connection and may be in the form of a voice call, a text message using the SMS protocol, a voice message, a call or message initiated on the mobile device 24₁ via the Internet, or an email. Once the communication (illustratively a voice call) is established, the customer authentication system 26 within the SCB-O 12 checks at 106 the mobile phone number associated with the SIM chip of the device 24₁ to identify whether the user 14₁ desiring to access the services of the SCB-system 10 is registered in the SCB-system 10 with the SCB-O 12. If the user 14₁ is not registered, the system 10 blocks the device 24₁ from accessing the services at 108 and the call is directed to the customer services management system 30 (as discussed herein above). Otherwise, the customer authentication system 26 transfers the call to the IVR system 28, which illustratively responds with pre-recorded or dynamically generated audio and presents at 110 the mobile device 24₁ with a menu of potential financial transactions available using the account to further direct the user 14₁ on how to process and enable selection (illustratively using a keypad comprised in the mobile device 24₁) of a desired transaction.

Still referring to FIG. 3 in addition to FIG. 2, a list of possible transactions is illustratively detailed in the menu presented to the mobile device 24₁ and comprises bank (financial) services, GSM services, services provided by the SCSPM 22 and services provided by other utility service providers (e.g. water or electricity providers). Examples of bank (financial) services (provided at 112ₐ and 112ᵦ) include regular bank (financial) services, such as obtaining financial account details (e.g. bank balance, line of credit, mortgage), and extended bank services such as bill payment, fund transfers to any other account held in the bank (financial

8

institution) 16₁, macro or micro person-to-person payments among users as in 14₁, 14₂, credit services payments, or access to SC-ATMs as in 20. Examples of GSM services (provided at 114) include detailed calling information for the mobile device 24₁, invoice details and payment, Asymmetric Digital Subscriber Line (ADSL) orders and any other telecommunication services provided by the SCB-system 10.

Referring now to FIG. 4 in addition to FIG. 2, in order to request a transfer of funds from a first user 14₁ to a second user 14₂, user 14₁ illustratively contacts the SCB-O 12 at 202 (and connects thereto using its unique ID number and password). The SCB-O 12 then verifies the ID number and password provided by the user 14₁ to ensure that the user is currently registered with the system 10 and has an active status. Once the user 14₁ has been authenticated, he SCB-O 12 contacts the financial institution (bank) 16₁ to which user 14₁ belongs to fetch the user's banking details as well as to request at 204 either a fund transfer from the financial account of user 14₁ to a financial account held by the SCB-O 12 in the same financial institution (bank) 16₁ or alternatively a fund holding from the financial account of user 14₁ for subsequent settlement with the SCB-O 12. Upon receiving this request, the financial institution (bank) 16₁ (after contacting the user 14₁, 14₂ via the extra integration system 45 to confirm, change, or cancel the transaction order, as mentioned herein above) either accepts or refuses the transaction and, upon approval of the latter, processes (using for example a suitable workstation, not shown) and confirms the transaction to the SCB-O 12 at 206. At 208, the SCB-O 12 then contacts the financial institution 16₂ to which user 14₂ belongs (after having ensured that user 14₂ is currently registered within the system 10) to issue an order to debit the SCB-O financial account and credit the financial account of user 14₂. If no financial account exists for the SCB-O 12, the financial institution 16₂ instead deposits the funds in the financial account of user 14₂ and subsequently requests settlement from the SCB-O 12. Upon completion of the transaction, financial institution (bank) 16₂ sends at 210 a confirmation message of success (or alternatively failure) to the SCB-O 12, which subsequently reports the confirmation to both users 14₁, 14₂ at 212 and 214 respectively.

Still referring to FIG. 4 in addition to FIG. 2, the SCB-system 10 is capable of providing a financial network 54 between the financial institutions (banks) 16₁, 16₂, the need for a correspondent financial account held by the SCB-O 12 can be alleviated and the fund transfer transaction described herein above may be processed directly between the financial institutions (banks) 16₁ and 16₂ by moving funds from the sender's account to the receiver's account over the network 54. In this case, the SCB-O 12 solely forwards the fund transfer requests and transaction confirmation message.

Referring now to FIG. 5 in addition to FIG. 2 and FIG. 4, the system 10 enables users as in 14₁, 14₂ to access a SC-ATM 20 connected to the SCB-system 10. Illustratively, the SC-ATM 20 is implemented as a standard ATM machine modified to include a registered SIM chip 72 having assigned thereto a unique ATM identifier or ID number 74 in the SCB-system 10, an intercommunication device (intercom) 76 and optionally a camera 78 for receiving calls from the SCB-O 12 and providing visual confirmation (e.g. by initiating a third generation (3G) mobile phone video conference) of the identity of a user 14₁, 14₂ in relation to a requested service. Similarly to requests for financial transactions, a user 14₁ requesting the use of a particular SC-ATM 20 illustratively connects to the SCB-O 12 at 202 in order to have access to the SC-ATM 20. The SCB-O 12 in turn verifies the identity of user 14₁ and upon positive

authentication, the IVR system **28** within the SCB-O **12** queries the user **14₁** for the ID number **74** of the SC-ATM **20**. The SCB-O then connects the user **14₁** to the specific SC-ATM **20** at **216** by opening via the intercom **76** and camera **78** and for a predetermined time interval a live visual and vocal channel connection (may be recorded for security and legal purposes) between the user **14₁** and the SC-ATM **20**. The user **14₁** then initiates a transaction, such as a request for withdrawal of banknotes, from the SC-ATM **20**. If the SC-ATM **20** belongs to the financial institution (bank) **16₁**, to which user **14₁** is affiliated, the SCB-O **12** connects to the financial institution (bank) **16₁** at **204** to request approval of the transaction, upon which approval the financial account of user **14₁** is debited and the money presented to the user **14₁** via the SC-ATM **20** in a conventional manner. Alternatively, if the SC-ATM **20** belongs to a financial institution (bank) **16₂** other than financial institution (bank) **16₁**, the SCB-O **12** illustratively connects to the financial institution (bank) **16₂** at **208** to request the financial transaction and, upon completion thereof, the financial institution (bank) **16₂** requests a financial settlement from the SCB-O **12** corresponding to the monetary amount disbursed. A confirmation message that the transaction was successfully completed (or alternatively failed) is then sent at **212** to the user **14₁**.

Referring now to FIG. **6** in addition to FIG. **2**, when the user **14₁** wishes to connect to a SCSPM **22**, such as a gas pump, the IVR system **28** illustratively similarly queries the user **14₁** for the ID number (SPM identifier) of the SCSPM **22** associated with the SIM chip **72** integrated therein. Upon entry of the requested ID number, the SCB-O then connects the user **14₁** to the specific SC-ATM **20** at **216** by opening via the intercom **76** and camera **78** and for a predetermined time interval a live two-way visual and vocal channel connection between the user **14₁** and the SCSPM **22**. The SCB-O then queries and confirms the monetary amount to be paid prior to issuing an order to the financial institution (bank) **16₁** to transfer the requested amount to the SCSPM **22**. Financial settlement between the financial institution (bank) (not shown) the SCSPM **22** is affiliated with and the financial institution (bank) **16₁** is illustratively processed in a manner similar to settlements discussed herein above. A confirmation message that the transaction was successfully completed (or alternatively failed) is then illustratively sent to the user **14₁**.

Referring back to FIG. **1**, the SCB-system **10** of the present invention advantageously allows users as in **14₁**, **14₂** to perform direct and comprehensive bank services and cashless payments directly through their financial account without having to apply for a new bank card. Also, whereas most prior art systems require service providers to be equipped with Point-Of-Sale (POS) terminals to confirm occurrence of the transaction, the present invention alleviates the need for such POS terminals to obtain confirmation. Also, the present invention overcomes security concerns by using the unique identification (e.g. mobile phone number) associated with the SIM chip of the mobile device **24₁**, **24₂**. As such, there is no need for special SIM chips to be integrated in the mobile devices as in **24₁**, **24₂** to provide users as in **14₁**, **14₂** access to the SC-ATM **20** and/or SCSPM **22** and any SIM chip (and thus any mobile device **24₁**, **24₂**) may be registered with the system **10**. Moreover, the present invention allows person-to-person transactions from any user **14₁**, **14₂** to another user **14₁**, **14₂**, even if the other user **14₁**, **14₂** is affiliated with a different bank **16₁**, **16₂**.

The invention claimed is:

1. An apparatus for enabling a user of a network enabled mobile device to effect financial transactions with a financial institution using the mobile device, the apparatus comprising:

a network enabled mobile device having associated therewith an identifier, wherein said network enabled mobile device is associated with a generic SIM chip having the identifier associated therewith, wherein the identifier includes a phone number associated with the generic SIM chip, and wherein the generic SIM chip lacks any extrinsic information corresponding to the financial institution;

a computerized system operator device comprising a first processor and a first customer database containing customer information associated with said identifier; and

a computerized first financial institution device comprising a second processor and a second customer database containing customer information relating customer financial account information in association with said identifier;

wherein the network enabled mobile device has been registered with the system operator device and with the first financial institution device for acquiring mobile payment service capabilities, the registration comprising associating said identifier with the first financial institution device and storing the information in a first database accessible to the system operator device, and in the second database accessible to the first financial institution device, and wherein said second database is different from the first database and is not accessible to the system operator device; and

wherein the system operator device is configured to:
establish a connection with the mobile device;
receive a request for financial transaction from the user using said mobile device, said request including said identifier that is associated with the generic SIM chip;
automatically authenticate said device through said identifier stored in the first database; and
in response to being authenticated, established a connection with the first financial institution device and then send a request for the financial transaction to said first financial institution device, said request including said identifier; and

wherein the first financial institution device is configured to:
receive said request from the system operator device;
use said identifier to retrieve from said database information used to communicate with said mobile device to request user confirmation of said request received from the system operator device; and
in response to confirmation by the user, perform said financial transaction using said customer financial account information associated with said identifier in said second database; wherein both the system operator device and the first financial institution device separately use the identifier that is associated with the mobile to authenticate the user.

2. The apparatus of claim **1**, wherein said network enabled mobile device is associated with a SIM chip, and the identifier is associated with the SIM chip.

3. The apparatus of claim **1**, wherein the system operator device is configured to receive the request for the financial transaction from the device via a first connection between the device and the system operator device, the first connec-

US 10,032,156 B2

11

12

tion established through a phone call initiated by the user using the device, and wherein the system operator device is configured to automatically authenticate said device by authenticating a voice of the user.

**4**. The apparatus of claim **1**, wherein the system operator device is configured to receive the request for the financial transaction from the device via a first connection between the device and the system operator device, the first connection established through a text message transmitted by the user being the device, and wherein the system operator device is configured to automatically authenticate said device by validating a pin code or a password provided by the user.

**5**. The apparatus of claim **1**, wherein the first financial institution device is configured to receive, in response to requesting user confirmation of said request received from the system operator device, the user confirmation, modification, or cancellation of said financial transaction.

**6**. The apparatus of claim **1**, further comprising:

a service providing machine in communication with said system operator device, wherein the request for the financial transaction received by the system operator device from the device is a request for transferring funds in payment for a service provided to the user by said service providing machine.

**7**. The apparatus of claim **6**, wherein the request for transferring funds is a request for transferring the funds form a first account associated with the user at the first financial institution device to a second account associated with the service providing machine at a second financial institution device different from the first financial institution device, wherein said system operator device is in communication with the first and second financial institution devices and has a first system operator account at the first financial institution device and a second system operator account at the second financial institution device, and the transferring of funds from said first account to said second account is carried out by an intermediary of said first and second system operator accounts.

**8**. A system for enabling users of network enabled mobile devices to effect financial transaction by directly accessing financial institution accounts at registered member financial institutions using the mobile devices, the mobile devices having associated therewith identifiers wherein the mobile devices are each associated with a corresponding generic SIM chip having one of the identifiers associated therewith, wherein the identifier includes a phone number associated with the generic SIM chip, and wherein the generic SIM chip lacks any extrinsic information corresponding to any of the registered member financial institutions, the system comprising:

a system operator comprising a processor, the system operator running operations configured to:

receive financial requests to effect financial transactions from uses through said network enabled mobile devices;

retrace the identifiers associated with the received financial requests;

authenticate said users said identifiers;

map said users to their respective member financial institutions among said registered member financial institutions using said identifiers;

establish communication channels with said users and with said member financial institutions through corresponding financial institutions having applications compatible with and pre-configured to operate with said system operator; and

intermediate between said users and said member financial institutions using said communication channels in order to facilitate said financial transaction, where said intermediate process comprises exchanging financial information in an automated and predefined manner;

wherein both the system operator and the first financial institution separately use the identifier that is associated with the mobile device to authenticate the user.

**9**. The system as claimed in claim **8**, wherein said financial requests consist of fund transfer requests and said financial transactions consist of fund transfers from a first account associated with a first financial institution to a second account associated with a second financial institution different from said first financial institution, where said first and second financial institutions are among said registered member financial institutions.

**10**. The system as claimed in claim **9**, wherein said first account is associated with a first user among said users and said second account is associated with a third party, where said first user uses a first mobile device associated with a first identifier to effect said fund transfers.

**11**. The system as claimed in claim **10**, further comprising:

a first database storing records mapping each identifier among said identifiers (i) to a specific user among said users and (ii) to a specific financial institution account associated with a specific financial institution among said registered member financial institutions,

wherein said system operator is configured to authenticate by inquiring said first database to verify whether said identifier is in the records upon reception of a financial request from said first user using said first mobile device.

**12**. The system as claimed in claim **11**, wherein said intermediation process by said system operator comprises automatically identifying said first account by inquiring said first database using said first identifier upon authentication of the first user, and generating and transmitting via said communication channels a fund transfer request to said first financial institution, where said fund transfer request comprises an identification of said first account, an identification of said second account, and a specification of a requested transfer amount.

**13**. The system as claimed in claim **12**, further comprising:

a second database, wherein said intermediation process further comprises receiving, by said system operator, a fund transfer commitment from said first financial institution, storing said fund transfer commitment in said second database for future reference, and transmitting an indication of said fund transfer commitment to said second financial institution and to at least one of said first user and said third party.

**14**. The system as claimed in claim **13**, wherein said intermediation process further comprises generating a financial report in connection with said fund transfer request, and storing said report in said second database for further reference.

**15**. The system as claimed in claim **10**, wherein said third party is a second user among said users.

**16**. The system as claimed in claim **10**, wherein said system operator is further configured to be connected to a service providing machine associated with said third party, and wherein said fund transfers consist of payment for services provided to the first user by said service providing machine.

US 10,032,156 B2

13

14

**17**. The system as claimed in claim **10**, wherein said system operator is further configured to be connected to a banking terminal associated with said third party, and wherein said fund transfer are for settlement for banknotes withdrawn from said banking terminal by said first user.

**18**. The system as claimed in claim **8**, wherein said system operator has system operator accounts in at least some of said registered member financial institutions, and said intermediation process further comprises processing said financial transactions by an intermediary of at least one of said system operator accounts.

*   *   *   *   *

EXHIBIT
2

## Claim Chart for U.S. Pat. No. 10,032,156
## Delaware Horizon, LLC v. Bank Muscat of Oman, et al.

Pursuant to the Court's Scheduling Order, Local Court Rules, or as otherwise required in connection with Plaintiff's Motion for Preliminary Injunction, Plaintiffs **Delaware Horizon, LLC** ("**DH**") and Mahmoud Al Sahli submit the following **Claim Chart** comparing claims of **U.S. Patent No. 10,032,156** (the "'**156 Patent**") to the accused product(s) and/or service(s) of **Defendant(s) Central Bank of Oman, et al**.

---

Financial and service institutions are linked to the Central Bank of Oman (CBO) MpClear system, in accordance with the regulatory framework established by the Central Bank for mobile payments. This framework mandates that all financial institutions located in the Sultanate of Oman must connect to and utilize this system. As a result, no financial or commercial entity is permitted to offer payment, transfer, or purchase services via mobile channels within the Sultanate of Oman or abroad unless it does so through the CBO MpClear system.

*This requirement is explicitly supported by Article 1.4 of the Legal and Regulatory Framework, point five, which states:*

*"Participation in the Mobile Payment Clearing and Switching System is <u>mandatory</u> for all commercial and specialized banks licensed to operate in the Sultanate of Oman, subject to the provisions of the Banking Law, and any other entity as approved/directed by the Central Bank that provides the facility for mobile payments through the mobile medium using mobile numbers."*

This chart sets forth Plaintiff's preliminary contentions regarding infringement and is based on publicly available information and discovery to date.

Plaintiff reserves the right to amend, supplement, or revise this chart in accordance with the Court's rules, discovery obtained, expert analysis, and claim construction rulings.

| 10,032,156<br><br>Claim Language | Central Bank of Oman (CBO) & all financial institutions linked to the system<br><br>"MpClear" Accused Product Feature | Does CBO's MpClear allegedly satisfy each limitation? |
|---|---|---|
| <u>**Claim 1:**</u> An apparatus for enabling a user of a **network enabled mobile device** to **effect financial transactions** with a **financial institution** using the **mobile device**, the apparatus comprising: | MpClear enables users to:<br><br>**perform financial transactions**<br><br>using **mobile phones** linked to<br><br>their **bank accounts**<br><br>via **SIM/number-based registration**. | **Yes** |

| | | |
|---|---|---|
| a **network enabled mobile device** having associated therewith an **identifier**, wherein said network enabled mobile device is associated with a **generic SIM chip** having the identifier associated therewith, wherein the **identifier** includes a **phone number** associated with the **generic SIM chip**, and wherein the **generic SIM chip lacks** any extrinsic **information** corresponding to the **financial institution**; | **Users register** with MpClear using a **mobile phone number** tied to **a SIM card**.<br><br>The **SIMs are generic** and **do not carry** embedded **bank-specific metadata**. | **Yes** |
| a **computerized system operator** device comprising a **first processor** and a **first customer database** containing **customer information** associated with said **identifier**; | The Central Bank of Oman (CBO), as **system operator**, manages the MpClear core and stores **customer mobile number** mappings in its **database**. | **Yes** |
| a **computerized first financial institution device** comprising a **second processor** and a **second customer database** containing **customer information** relating cus**tomer financial account information** in association with said **identifier**; | **Each bank** connected to MpClear maintains its **own systems** and **databases linking phone numbers** to **customer financial account data**. | **Yes** |
| wherein the network enabled **mobile device** has been **registered** with the system operator device and with the **first financial institution** device for acquiring mobile payment service capabilities, the registration comprising associating said **identifier** with the **first financial institution device** and storing the information in a **first database** accessible to the **system operator device**, and in the **second database** | During **registration**, **MpClear** and **banks** both **store** and **manage** mappings of **phone numbers** to **accounts**.<br><br>**CBO does not access** bank customer account databases **directly**—this separation is **consistent with Claim 1**. | **Yes** |

| | | |
|---|---|---|
| accessible to the **first financial institution device**, and wherein said **second database** is **different** from the **first database** and **is not accessible to the system operator device**; | | |
| wherein the **system operator device** is configured to: **establish a connection** with the **mobile device**; | **MpClear** initiates **transactions** upon user request via mobile app/SMS, **establishing communication** with CBO infrastructure. | **Yes** |
| receive a **request** for **financial transaction** from the **user** using said **mobile device**, said request including said **identifier** that is associated with the **generic SIM chip**; | User-initiated **requests** are **sent** to **MpClear** with **phone number** as the **key identifier**. | **Yes** |
| automatically **authenticate** said device through said **identifier** stored in the **first database**; | CBO **verifies** that the **phone number** is **registered** and **active** for initiating **transactions**. | **Yes** |
| in response to being authenticated, established a **connection** with the **first financial institution device** and then send a **request** for the **financial transaction** to said **first financial institution device**, said request including said **identifier**; | Once **validated**, MpClear **routes** the **transaction** to the appropriate **bank identified** via the alias. | **Yes** |
| wherein the **first financial institution device** is configured to: **receive** said **request** from the **system operator device**; | Participating **banks receive** and **process requests** from **MpClear** on **behalf of** their **users**. | **Yes** |
| use said **identifier** to retrieve from said database information used to **communicate** with said **mobile device** to request user **confirmation** of said **request** received from the **system operator device**; | Banks **confirm** the **user action** using **SMS** or in-app notification **based on the phone number** associated with the account. | **Yes** |

| | | |
|---|---|---|
| in response to confirmation by the user, **perform said financial transaction** using said **customer financial account information** associated with said **identifier** in said **second database**; | The **bank executes** the requested **transaction using the user's account** details tied to the **phone number** in its **own system**. | **Yes** |
| wherein **both** the **system operator device** and the **first financial institution device** separately use the **identifier** that is associated with the **mobile [device]** to **authenticate** the user. | CBO **validates registration** status; the bank **separately verifies** identity/account **association** using the **same phone number**. | **Yes** |
| <u>**Claim 2:**</u> The apparatus of claim 1, wherein<br><br>said **network enabled mobile device** is associated with a **SIM chip**, and<br><br>the **identifier** is associated with the **SIM chip.** | Users in MpClear register using **mobile phones** equipped **with SIM chips**.<br><br>The **mobile number (identifier) is tied to** the **SIM** and used **for** all **authentication** and **transaction processes**. | **Yes** |
| <u>**Claim 4:**</u> The apparatus of claim 1, wherein the system operator device is configured to<br><br>**receive** the **request** for the **financial transaction** from the **device** via a **first connection** between the **device** and the **system operator device**,<br><br>the **first connection** established through a **text message** transmitted **by the user** [sic] being the device, and<br><br>wherein the **system operator device** is configured to **automatically authenticate** said **device** by **validating** a **pin code** or a **password** provided by the user. | MpClear supports:<br><br>**user authentication** using a **PIN** or **password via mobile application** or<br><br>**SMS-based verification** methods.<br><br>It aligns with Claim 4 as **users authenticate** via **credential input** and the **request** can be routed via **secure messaging infrastructure**. | **Yes** |
| <u>**Claim 5:**</u> The apparatus of claim 1, wherein<br><br>the **first financial institution device** is configured to **receive**, in response to **requesting user confirmation** of said | MpClear supports:<br><br>user **interaction** via **mobile banking interfaces** and SMS/OTP confirmation. | **Yes** |

| | | |
|---|---|---|
| **request** received from the **system operator device,**<br><br>the user **confirmation, modification,** or **cancellation** of said financial transaction. | Users may **confirm, cancel,** or **decline** actions on pending transaction requests, which are **processed** through the **respective bank's system.** | |
| <u>**Claim 6:**</u> The apparatus of claim 1, further comprising:<br><br>a **service providing machine** in communication with said system operator device, wherein<br><br>the **request for the financial transaction received by** the **system operator device from** the **device** is<br><br>a **request for transferring funds** in **payment for a service** provided to the user by said **service providing machine.** | MpClear enables:<br><br>users to make payments to **utility kiosks**, telecom recharge terminals, and **other automated service devices**, which qualify as **service providing machines** under Claim 6.<br><br>These **machines interface** with the **central system** to **receive** and **confirm payments.** | **Yes** |
| <u>**Claim 7:**</u> The apparatus of claim 6, wherein<br><br>the **request for transferring funds** is a request for transferring the funds from a **first account** associated with the **user** at the **first financial institution device** to<br><br>a **second account** associated with the **service providing machine** at a **second financial institution device** different from the **first financial institution device,** wherein<br><br>said **system operator device** is in **communication** with the **first** and **second financial institution devices** and<br><br>has a **first system operator account** at the **first financial institution device** and<br><br>a **second system operator account** at the **second financial institution device,** and | MpClear enables:<br><br>**transfers** from a **user's account at one bank to**<br><br>a **service provider's account at a different bank.**<br><br>The Central Bank of Oman, as **system operator,**<br><br>maintains **intermediary clearing accounts**<br><br>at **both institutions** and<br><br>**routes** the **funds** between them **accordingly.** | **Yes** |

| | | |
|---|---|---|
| the **transferring** of **funds from** said **first account** to said **second account** [is] carries[d] out through<br><br>an **intermediary** of said **first** and **second system operator accounts**. | | |
| **Claim 8:** A system for enabling users of network enabled mobile devices to effect financial transaction by directly accessing financial institution accounts at registered member financial institutions using the mobile devices,<br><br>the **mobile devices** having associated therewith **identifiers** wherein the **mobile devices** are each associated with a corresponding **generic SIM chip** having one of the identifiers associated therewith, wherein<br><br>the **identifier** includes a **phone number** associated with the **generic SIM chip**, and wherein<br><br>the **generic SIM chip** lacks any extrinsic information corresponding to any of the registered member financial institutions, the system comprising:<br><br>a **system operator** comprising a processor, the system operator running operations configured to:<br><br>**receive financial requests** to effect financial transactions from users through said network enabled mobile devices;<br><br>**retrace the identifiers** associated with the received financial requests;<br><br>**authenticate said users** via said identifiers;<br><br>**map said users** to their respective member financial institutions among | MpClear supports:<br><br><br><br><br><br>**mobile-initiated transactions** where users authenticate using **phone numbers** linked to **SIMs**.<br><br>These identifiers are **mapped to participating banks**.<br><br>The **Central Bank of Oman acts as system operator**, routing transaction requests and facilitating financial operations between the mobile user and their bank.<br><br>**Authentication** is performed at both CBO (system operator) and bank level using the same phone number.<br><br>**Communication** between user devices and institutions is secured through pre-configured app infrastructure and national registry mapping. | **Yes** |

| | | |
|---|---|---|
| said registered member financial institutions using said identifiers;<br><br>**establish communication channels with said users and with said member financial institutions** through corresponding financial institutions having applications compatible with and pre-configured to operate with said system operator; and<br><br>**intermediate between said users and said member financial institutions** using said communication channels in order to facilitate said financial transaction, where said<br><br>intermediate process comprises **exchanging financial information** in an automated and predefined manner; wherein<br><br>both the **system operator** and the **first financial institution** separately use<br><br>the **identifier** that is associated with the mobile device to authenticate the user. | | |
| <u>Claim 9:</u> The system as claimed in claim 8, wherein said<br><br>financial requests consist of<br><br>**fund transfer requests** and said<br><br>financial transactions consist of **fund transfers**<br><br>from a **first account** associated with a **first financial institution** to<br><br>a **second account** associated with a **second financial institution different** from said **first financial institution**, | MpClear supports:<br><br>interbank transfers between **two different financial institutions** in Oman,<br><br>**both** of which are **part of** the **national payment network**.<br><br>**Users** can initiate fund **transfer requests from one account to another**, and<br><br>these are **processed** through the **Central Bank of Oman's clearing and settlement system**. | **Yes** |

| | | |
|---|---|---|
| where said first and second financial institutions are **among said registered member financial institutions**. | | |
| **Claim 10:** The system as claimed in claim 9, wherein said<br><br>**first account** is associated with a **first user** among said users and<br><br>said **second account** is associated with a **third party**,<br><br>where said **first user** uses a **first mobile device** associated with a **first identifier** to effect said **fund transfers**. | MpClear supports:<br><br>**person-to-person** and<br><br>**person-to-business** transactions.<br><br>A **user** with a **registered mobile device** and phone number (**identifier**) can **transfer** funds to **third parties**,<br><br>including **non-registered recipients and service providers, through their own financial institution**. | **Yes** |
| The system as claimed in claim 10, further comprising:<br><br>a **first database** storing records mapping each identifier among said identifiers<br><br>(i) to a **specific user** among said users and<br>(ii) to a **specific financial institution account** associated with a specific financial institution among said registered member financial institutions, wherein said<br><br>**system operator** is configured to authenticate<br><br>by inquiring said **first database** to verify whether said identifier **is in the records** upon reception of a **financial request**<br><br>**from said first user using said first mobile device.** | MpClear maintains:<br><br>a **central registry** (first database) managed by the Central Bank of Oman that maps<br><br>**user identifiers** (phone numbers) to users<br><br>and their financial institution **accounts**.<br><br>This database is **queried** during transaction initiation to **verify** and **authenticate** the **user's identity** and **institution**. | **Yes** |
| **Claim 12:** The system as claimed in claim 11, wherein | Upon authenticating a user via their mobile identifier, MpClear retrieves:<br><br>their **account details** from its database. | **Yes** |

| | | |
|---|---|---|
| said **intermediation process** by said **system operator** comprises<br><br>**automatically identifying said first account** by inquiring said first database using said **first identifier** upon **authentication** of the **first user**, and<br><br>**generating and transmitting** via said communication channels a **fund transfer** request to said **first financial institution**, where<br><br>said **fund transfer request** comprises an **identification** of said **first account**,<br><br>an **identification** of said **second account**, and<br><br>a **specification** of a **requested transfer amount**. | MpClear then generates a **fund transfer** request that includes<br><br>the **sender** and<br><br>**recipient account information** and<br><br>the **requested amount**,<br><br>which MpClear **transmits** to<br><br>the **originating financial institution for processing**. | |
| <u>Claim 13:</u> The system as claimed in claim 12, further comprising:<br><br>a **second database**, wherein said<br><br>**intermediation process** further comprises<br><br>**receiving**, by said **system operator**,<br><br>a **fund transfer commitment** from said **first financial institution**,<br><br>storing said **fund transfer commitment** in said **second database** for future reference, and<br><br>**transmitting** an indication of said **fund transfer commitment**<br><br>**to** said **second financial institution** and<br><br>**to** at least **one of said first user** and said **third party**. | MpClear processes include:<br><br>**receipt of fund transfer commitments** from sending institutions.<br><br>These acknowledgments are **logged** for audit and settlement **reconciliation**, and<br><br>**confirmation messages** are sent to<br><br>**both** receiving **institutions** and<br><br>**end users**<br><br>**confirming** the commitment to **transfer funds**. | **Yes** |

| | | |
|---|---|---|
| **Claim 14:** The system as claimed in claim 13, wherein said<br><br>**intermediation process** further comprises<br><br>**generating** a financial **report** in connection with said **fund transfer request**, and<br><br>**storing** said **report** in said second **database** for **further reference**. | MpClear **generates**:<br><br>**audit logs** and<br><br>financial transaction **reports**<br><br>related to **each** processed **fund transfer**.<br><br>These **reports** are **stored centrally** within CBO's system and<br><br>are accessible for **auditing**, **regulatory compliance**, and **future reference**. | **Yes** |
| **Claim 15:** The system as claimed in claim 10, wherein said<br><br>**third party** is a **second user** among said users. | MpClear supports:<br><br>**peer-to-peer (P2P) fund transfers** between users **within the system**.<br><br>A **first user** can send funds to a **second user**, **both** of whom **are**<br><br>**registered** with their respective **financial institutions** and<br><br>**identified** by **mobile numbers**. | **Yes** |
| **Claim 16:** The system as claimed in claim 10, wherein said<br><br>**system operator** is further **configured** to<br><br>be **connected** to a **service providing machine** associated with said **third party**, and wherein said<br><br>**fund transfers** consist of **payment** for **services provided to the first user** by said **service providing machine**. | MpClear supports:<br><br>**payments** to **kiosks and service machines** for telecom top-ups, utility payments, and government services.<br><br>These **service endpoints** are **connected** to<br><br>the **central operator** and<br><br>**treated as registered endpoints** capable of **receiving fund transfers on behalf** of **third-party service providers**. | **Yes** |
| **Claim 17:** The system as claimed in claim 10, wherein said<br><br>**system operator** is further configured to | MpClear:<br><br>**connects to** national and commercial **ATM networks** that | **Yes** |

| | | |
|---|---|---|
| be **connected to** a **banking terminal** associated with said **third party**, and wherein said<br><br>**fund transfers** are for **settlement** for banknotes **withdrawn** from said banking terminal **by said first user**. | **enable users** to **withdraw funds** from banking terminals.<br><br>These **withdrawals trigger** interbank fund transfer **settlements**, which the Central Bank of Oman (CBO)<br><br>**processes** using **clearing** and **reconciliation accounts**. | |
| <u>**Claim 18:**</u> The system as claimed in claim 8, wherein said<br><br>**system operator** has **system operator accounts** in at least some of said **registered member financial institutions**, and said<br><br>**intermediation process** further comprises<br><br>**processing** said financial **transactions** by an **intermediary of** at least one of said **system operator accounts**. | The **Central Bank of Oman**, as **system operator** for MpClear:<br><br>**holds accounts** with the registered **financial institutions** participating **in the system**.<br><br>**Transactions** are **routed** through these **intermediary accounts**<br><br>**for clearing** and<br><br>**settlement** between **sender** and **recipient banks**. | **Yes** |

## **VERIFICATION OF PATENT CLAIM CHART**

I, Jeffery Baron Lesperance, declare and state as follows:

1. I am a registered patent attorney licensed to practice before the United States Patent and Trademark Office and the principal of The Patent Baron PLLC. I have personal knowledge of the matters stated herein, and if called to testify, I could and would competently testify to the same.

2. I have reviewed and participated in the preparation of the attached Patent Claim Chart (Exhibit A) relating to U.S. Patent No. 10,032,156 in connection with the Delaware Horizon, Inc., et al. v. Central Bank of Oman, et al. litigation to be filed in the United States District Court for the Northern District of Ohio, Western Division.

3. I verify that, to the best of my knowledge, information, and belief, formed after a reasonable inquiry, the factual contentions set forth in the attached Patent Claim Chart have evidentiary support and are presented in good faith in connection with the enforcement of the above-identified patent.

4. Attached hereto as Exhibit B is a true and correct copy of my current curriculum vitae.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 27th day of ___May___, 2025, at _915 N. Mich. Ave Howell MI 48843_

Jeffery Baron Lesperance

Patent Attorney, Reg. No. 57,182

The Patent Baron, PLLC

Page 1 of 2

State of Michigan

County of _Livingston_

Subscribed and sworn to before me this 27 day of _May_____, 2025, by Jeffery Baron Lesperance, who is personally known to me or who has produced valid identification.

_____

Notary Public

My Commission Expires: 5-18-29

*[Notary seal: JOANN MCKEOGH, NOTARY PUBLIC, COUNTY OF OAKLAND, My Commission Expires 05/18/2029, Acting in the County of Livingston, STATE OF MICHIGAN]*

Exhibit A: Patent Claim Chart

Exhibit B: Curriculum Vitae of Jeffery Baron Lesperance

Page 2 of 2

**EXPERT CURRICULUM VITAE**
**J. Baron Lesperance, Esq.**
The Patent Baron PLLC
www.patentbaron.com
Email: baron@patentbaron.com | Phone: 202-897-4747
915 N. Michigan Ave., Ste 206
Howell, MI 48843

[EXHIBIT B]

## PROFESSIONAL PROFILE

U.S. Registered Patent Attorney with over 20 years of legal experience in intellectual property law, focusing on patent prosecution, litigation support, and IP portfolio development. Extensive background in computer-implemented inventions, financial transaction systems, and mobile communication technologies. Trusted legal advisor to inventors, companies, and law firms nationwide. Proven ability to analyze claim scope, draft infringement and invalidity contentions, and serve as an expert witness on U.S. patent law and practice.

## EDUCATION

- **M.S., Electrical and Computer Engineering,** Lawrence Technological University, 2014

- **LL.M., Intellectual Property,** Thomas M. Cooley Law School, 2005

- **J.D.,** Thomas M. Cooley Law School, 2002

- **M.S., International Administration,** Central Michigan University, 1998

- **B.S., Mechanical Engineering,** Lawrence Technological University, 1996

## BAR ADMISSIONS AND REGISTRATIONS

- U.S. Patent and Trademark Office (Reg. No. 57,182)

- Michigan, USA – Admitted to practice, State Bar of Michigan

- District of Columbia, USA – Admitted to Practice, DC Bar

- Ontario, Canada – Called to the Bar as Barrister & Solicitor, Member of the Law Society of Ontario

- Supreme Court of the United States

- U.S. Court of Appeals for the Sixth Circuit

- U.S. District Court, Eastern District of Michigan

*Note: Not admitted to the State Bar of Ohio or any Ohio courts.*

**AREAS OF EXPERTISE**

- Registered Patent Attorney for 20 years.

- U.S. Patent Law (35 U.S.C. § 101 et seq.).

- Claim construction and infringement analysis.

- Mobile devices, SIM-based technologies, and wireless networks.

- Electrical, mechanical, and computer technologies.

- Managing global patent portfolios, patent strategy and outside counsel.

- Drafting and interpreting patent claims under MPEP and Federal Circuit precedent.

- Automotive Engineer for 7 years – Ford Motor Co, Robert Bosch & Hella GmbH, Lear Corporation.

**RELEVANT EXPERIENCE**

**The Patent Baron PLLC** – Founder/CEO/Patent Attorney (2021–Present)

- Manage a boutique IP firm representing clients in patent acquisition and enforcement matters, including mobile and fintech systems.

- Prepare infringement and validity claim charts, declarations, and expert reports.

- Advise litigation counsel and testify (as needed) regarding U.S. patent procedures and technologies.

**Patent Counsel to Delaware Horizons, Inc.** (2025-Present)

- Serve as lead patent attorney for enforcement of U.S. Patent No. 10,032,156.

- Conduct technical claim mapping of the MpClear system and related banking applications.

- Authored detailed Claim Chart (Exhibit 2) for pending litigation in U.S. District Court, N.D. Ohio.

**Of Counsel – Confidant Consult, PLLC** – Grand Rapids, MI (2022-present)

- Drafting and prosecution of patent and trademark applications for US and International clients.

- Representing clients in various matters, including civil litigation and business law.

**Of Counsel – Remenick, PLLC** – Washington, DC (2019–2021)

- Drafted and prosecuted patent applications related to electrical and mechanical devices.

- Provided litigation support, including expert review of file histories, prior art analysis, and inter partes review strategy.

**Patent Attorney – Dickinson Wright, PLLC** – Troy, MI (2018-2019)

- Drafted and prosecuted patent applications related to automotive products and various electrical and mechanical devices.

- Provided litigation support, including expert review of file histories, prior art analysis, and inter partes review strategy.

**Patent Attorney – Dykema, PLLC** – Bloomfield Hills, MI (2015-2017)

- Drafted and prosecuted patent applications related to computer software, including airline reservation and inventory management systems.

- Provided litigation support, including expert review of file histories, prior art analysis, and inter partes review strategy.

**Patent Attorney – Novak Druce, PLLC** – West Palm Beach, FL (2015)

- Drafted and prosecuted patent applications for Apple, Inc. and its subsidiaries, as well as other international clients.

**Patent Attorney – Oakland Law Group, PLLC** – Farmington Hills, MI (2014-2015)

- Drafted and prosecuted patent applications related to companies owned and operated by Manoj Bhargava, founder of Living Essentials, LLC.

**Corporate Patent Counsel – Alticor** – Ada, MI (2007-2010)

- Drafted and prosecuted patent applications pertaining to wireless charging technology for Access Business Group, a division of Alticor, the parent of Amway.

- Supervised a global patent portfolio of over 1200 patents and patent applications.

**Patent Attorney – Novak Druce, PLLC** – Washington, DC (2005-2007)

- Drafted and prosecuted patent applications related to mechanical and electrical products.

**PUBLICATIONS & PRESENTATIONS**

- ***What is the Mid-House Counsel?*** *The Patent Lawyer - CTC Legal Media* · Apr 14, 2021

- ***Client Service Lessons Learned Serving as Both In-House and Outside Counsel,*** *Corporate Counsel Magazine* · Dec 1, 2020

- ***Five Common Frustrations With Outside Counsel***, IP Magazine · Nov 1, 2020

- **Patent Strategies Five Years after the America Invents Act,** *IEEE PELS Workshop on Emerging Technologies: Wireless Power 2016* · Oct 5, 2016

## EXPERT DECLARATION EXPERIENCE

- Authored expert Claim Chart and Verification in **Delaware Horizons, Inc. et al. v. Central Bank of Oman et al.**, U.S. District Court for the Northern District of Ohio.

- Familiar with oath, affirmation, and cross-examination procedures under Federal Rules of Evidence and Civil Procedure.

## PROFESSIONAL AFFILIATIONS

- American Bar Association (ABA)

- State Bar of Michigan

- District of Columbia Bar

- Law Society of Ontario (Canada)

- Institute of Electrical and Electronics Engineers (IEEE)

- Oakland County (MI) Bar Association



**Saint Louis Trading & Investment Company** شركة سانت لويس للتجارة العامة والاستثمار

**Saint Louis for Translation** ســـانت لويــــس للترجمـــة

---

In the Name of Allah, the Most Gracious, the Most Merciful

> EXHIBIT
> 3

CENTRAL BANK OF OMAN

**Central Bank of Oman**
Executive President

STRICTLY CONFIDENTIAL

**Reference No.: DQ/16/2023/111**
**Date:** 6 Shawwal 1444 AH
**Corresponding to:** 27 April 2023

**To:**
The Honorable Chairman of the Board of Directors
Muscat Financial Services Company
P.O. Box 2352, Postal Code 112, Ruwi

Saint Louis Translation Company
License No.: 39412
I, the undersigned, hereby certify that this translation is accurate and true to the best of my knowledge.
Date:........................... No. of stamp:(1)
Signature:

**Subject:** Press Announcement Regarding Warning to Banks and Financial Institutions

**Dear Sir,**

**Peace be upon you, and Allah's mercy and blessings...**

On **20 March 2023**, a press announcement was published in the **Times of Oman** (copy attached), allegedly issued in the name of **Muscat Financial Services LLC**, identifying it as the commercial agent in the Sultanate of Oman for a foreign company claiming to be American and called **Delaware Horizon**. The announcement also included the logo of another company. The announcement claimed that the mentioned foreign company owns patent rights related to the use of mobile phones for conducting "payments and financial transfers" and warned banks and institutions against infringing on those rights.

The said announcement caused confusion and unrest within the banking sector and the overall financial system in the Sultanate of Oman, both of which are critical pillars of the Omani economy. The Central Bank received numerous inquiries from licensed banks and payment service providers regarding the nature and intent of this announcement.

The announcement constitutes an infringement on banking operations and payment services, which are regulated and supervised by the **Central Bank of Oman** under the **Banking Law No. 114/2000** and the **National Payment Systems Law No. 8/2018**. The announcement warned licensed banks and financial institutions against using mobile phones for conducting financial transfers and payments.

It is evident that licensed banks have introduced electronic banking services via mobile phones to facilitate access for their customers to banking services. This development represents a significant advancement in banking operations in the Sultanate of Oman and aligns with the country's strategic plans for digital transformation and the implementation of **Vision 2040**.

As a result, bank customers can now perform various banking transactions, including transfers via mobile phone applications, supported by the mobile number linked between the bank and the customer. Additionally, bank customers and payment service providers can also make payments. This initiative supports financial inclusion and ensures that banking and payment services are accessible to all citizens and residents throughout the Sultanate of Oman, 24/7.

---



Saint Louis Trading & Investment Company شركة سانت لويس للتجارة العامة والاستثمار

**Saint Louis for Translation** ســـانت لويــــس للترجمـــة

It would have been more appropriate for **Muscat Financial Services**, as an Omani national company working with all national private and public institutions to enhance and develop financial services— pursuant to its goals aimed at success and profit, as is expected and known of companies and establishments—to issue a direct warning to any bank or financial institution it deems to be infringing on its patent rights and to specify the aspects of such infringement. Alternatively, the company could have published an announcement about its rights to the mentioned patent, if it so wished, without issuing a specific warning to banks and financial institutions, particularly one framed in such general terms regarding all banking services and payment services provided by banks and financial institutions via mobile phones.

We also point out that the other company mentioned in the announcement has declared itself as a foreign company and stated that the mentioned patent registration was carried out abroad. This implies that neither this company nor any person enjoys rights related to that patent within the territory of the Sultanate of Oman.

Accordingly, this announcement has caused significant harm to the financial system in the Sultanate of Oman, whose impact on the national economy is well-known. This harm has been inflicted directly by creating confusion and negatively affecting its reputation.

Given that the **Central Bank of Oman**, under its legally mandated responsibilities, is tasked with ensuring financial stability and guaranteeing the security and soundness of the banking system and payment services, we inform you of the Central Bank's determination to take all necessary measures to achieve these objectives. Like other countries in the region that have taken decisive actions in similar incidents, the Sultanate of Oman will not be an exception. These measures may include taking appropriate legal action if necessary.

**Yours sincerely,**

**Taher bin Salem bin Abdullah Al-Omari**
**Chief Executive Officer** *(Signature)*

**Copies, with compliments, to:**

- His Excellency the Minister of Commerce, Industry, and Investment Promotion
- His Excellency the Public Prosecutor

- **P.O. Box: 1161, Ruwi, Postal Code: 112, Sultanate of Oman - Tel.:** (+968) 24777500, **Fax:** 24777750 - http://www.cbo.gov.om

CENTRAL BANK OF OMAN



**Saint Louis Trading & Investment Company** شركة سانت لويس للتجارة العامة والاستثمار

**Saint Louis for Translation** ســــانت لويــــــس للترجمــــــة

# Address

## Ghala – Bousher
## Exhibition Street
## Building No. 245

## Near Royal Oman Police | Muscat Financial Services Company







**Saint Louis Trading & Investment Company** شركة سانت لويس للتجارة العامة والاستثمار

**Saint Louis for Translation** ســـانت لويـــــس للترجمـــــة

---

CENTRAL BANK OF OMAN

## Sultanate of Oman | Central Bank of Oman

### Receipt Acknowledgment
### Confidentiality Level: Urgent

**Message No.:** DQ/16/2023/111
**Date:** 27/4/2023
**Subject:** Press Announcement Regarding Warning to Banks and Financial Institutions

**Addressed to:**
The Honorable Chairman of the Board,
Muscat Financial Services Company

**Location:**
Muscat Financial Services Company

**Recipient Name:** Hashem Is'hanon
**Date of Receipt:** 06-05-2023
**Recipient's Signature:** *"Signature"*
**Stamp:** ...............................

---

**P.O. Box:** 1161, Ruwi, Postal Code: 112, Sultanate of Oman - **Tel.:** (+968) 24777500, **Fax:** 24777750 - http://www.cbo.gov.om

---



شركة سانت لويس للتجارة العامة والاستثمار **Saint Louis Trading & Investment Company**

**Saint Louis for Translation** ســـانت لويـــــس للترجمـــة

Translation



express
All in One App
كل ما تحتاج في تطبيق واحد

مسقط لخدمات المالية ش م م
**Muscat Financial Services LLC**

# WARNING OF PATENT INFRINGEMENT

The American Company Delaware Horizon INC and its commercial agent in the Sultanate of Oman Muscat Financial Services & Investment LLC. drew the attention of all commercial financial and banking and other institutions to not commit any infringing or continuing to infringe on its patent or any of its elements, registered in most countries, including the United States of America and the Sultanate of Oman, which patent rights are owned by the Delaware Horizon and are related to payment and financial transfer through a cell phone, in order to avoid legal pursuit and legal consequences as per the applicable laws.

For contact and inquiries

info@mfsioman.com
info@delaware-horizon.com





**Central Bank of Oman**

**Executive President**

البَنْكُ المَرْكَزِيُّ العُمَّانِيُّ

الرَّئِيسُ التَّنْفِيذِيُّ



STRICTLY CONFIDENTIAL

الرقــم : دق/٦/٢٠٢٣/ ١١١

التاريخ : ٦ شوال ١٤٤٤هـ

الموافق: ٧ ابريل ٢٠٢٣م

**الفاضل/ رئيس مجلس إدارة شركة مسقط للخدمات المالية    المحترم**

صندوق بريد ٢٣٥٢ ، الرمز البريدي ١١٢، روي

السلام عليكم ورحمة الله وبركاته .. وبعد،

## الموضوع: الإعلان الصحفي بشأن تحذير المصارف والمؤسسات المالية

تم نشر إعلان صحفي بتاريخ ٢٠٢٣/٣/٢٠م في صحيفة (Times of Oman)، صورة مرفقة، تمت الإشارة فيه إلى أنه صادر بإسم شركة مسقط للخدمات المالية ش.م.م بوصفها الوكيل التجاري في سلطنة عمان لشركة أجنبية يزعم الإعلان أنها أمريكية تسمى دالوير هورايزون (Delaware Horizon)، كما اشتمل الإعلان على شعار شركة أخرى، وقد نص الإعلان على أن الشركة الأجنبية المذكورة تملك حقوق براءة الإختراع المتعلقة باستخدام الهواتف النقالة لإجراء "المدفوعات والتحويلات المالية"، ويحذر الإعلان المصارف والمؤسسات من انتهاك تلك الحقوق.

تسبب الإعلان المذكور في حدوث البلبلة والريبة في القطاع المصرفي وفي النظام المالي بشكل عام في سلطنة عمان، واللذين يعتبران من الركائز الأساسية للإقتصاد العماني، حيث تلقى البنك المركزي العديد من الاستفسارات من المصارف المرخصة ومزودي خدمات المدفوعات عن ماهية هذا الإعلان والقصد منه.

فالإعلان المذكور شكل تعديا على الأعمال المصرفية وخدمات المدفوعات التي يشرف عليها وينظمها البنك المركزي العماني وفقا للقانون المصرفي رقم ٢٠٠٠/١١٤ وقانون نظم المدفوعات الوطنية رقم ٢٠١٨/٨، حيث حذر الإعلان المصارف المرخصة والمؤسسات المالية، من استخدام الهاتف النقال في إجراء التحويلات المالية والمدفوعات. فالثابت أن المصارف المرخصة قد أطلقت الخدمات المصرفية الإلكترونية عبر الهاتف النقال وذلك تسهيلا لعملائها في تلقي الخدمات المصرفية ، الأمر الذي يعد تطورا مهما في العمل المصرفي في سلطنة عمان كما أنه ينسجم مع الخطط الاستراتيجية للدولة في التحول الرقمي وفي دعم وتنفيذ رؤية ٢٠٤٠. وتبعا لذلك فقد أصبح متاحا لعملاء المصارف إجراء العديد من المعاملات المصرفية تشمل التحويلات من خلال تطبيق الهاتف النقال بدعم من رقم الهاتف النقال المثبت بين المصرف والعميل، كما أصبح متاحا لعملاء المصارف ومزودي خدمات المدفوعات أيضا إجراء المدفوعات ، وسيساعد ذلك أيضا في تحقيق الشمول المالي وضمان إتاحة الخدمات المصرفية وخدمات المدفوعات لجميع المواطنين والمقيمين في أنحاء سلطنة عمان على مدار الساعة.

بسم الله الرحمن الرحيم

**Central Bank of Oman**

**Executive President**



البَنْك المَرْكَزِي العُمَّانِي

الرَّئِيْسْ التَّنْفِيْذِي

لقد كان حريا بشركة مسقط للخدمات المالية، بوصفها شركة عمانية وطنية تعمل مع جميع المؤسسات الوطنية الخاصة والعامة على رفعة وتطوير الخدمات المالية وذلك ضمن غاياتها التي تستهدف النجاح والربح كما هو متوقع ومعروف عن المؤسسات والمنشآت، أن توجه تحذيرا مباشرا لأي مصرف أو مؤسسة مالية ترى أنها تنتهك حقوقها في براءة الإختراع المذكورة وأن تبين أوجه ذلك الإنتهاك، أو أن تعلن بالنشر عن حقوقها في براءة الإختراع المذكورة، إن أرادت، دون توجيه تحذير خاص للمصارف والمؤسسات المالية مع الصبغة الشاملة التي حواها التحذير بشأن جميع الخدمات المصرفية وخدمات المدفوعات التي تقدمها المصارف والمؤسسات المالية عبر الهاتف النقال.

كما نشير إلى أن الشركة الأخرى المذكورة في الإعلان قد أعلنت بأنها شركة أجنبية وأن تسجيل براءة الإختراع المذكورة في الإعلان قد تم في الخارج، مما يعني عدم تمتعها أو تمنع أي شخص بالحقوق المتعلقة بتلك البراءة في داخل إقليم سلطنة عمان.

عليه، فإن هذا الإعلان قد شكل فعلا ضارا بالنظام المالي في سلطنة عمان، الذي تعرفون مدى أثره على الإقتصاد الوطني، وذلك على نحو مباشر من خلال إثارة البلبلة فيه والتأثير المغرض على سمعته.

وحيث أن البنك المركزي العماني يختص ضمن وظائفه المناطة به قانونا بتحقيق الإستقرار المالي وضمان أمن وسلامة النظام المصرفي وخدمات المدفوعات ، فإننا نفيدكم بعزم البنك المركزي القيام بجميع الإجراءات التي تضمن تحقيق تلك الأهداف **كغيره من دول المنطقة التي اتخذت إجراءات حاسمة في وقائع مماثلة** ولن تكون سلطنة عمان إستثناءً من ذلك، وستشمل تلك الإجراءات اتخاذ الإجراءات القانونية المناسبة إن لزم الأمر.

٦

وتفضلوا بقبول فائق الإحترام والتقدير

طاهر بن سالم بن عبدالله العمري
الرئيس التنفيذي

نسخة مع التحية إلى:

معالي/ وزير التجارة والصناعة وترويج الإستثمار    الموقر
سعادة/ المدعي العام    المحترم

ص.ب : ١١٦١ روي، الـرمـز البـريدي : ١١٢، سـلـطـنـة عمـان، هاتـف : ٢٤٧٧٧٥٠٠، فاكـس : ٢٤٧٧٧٧٥٠
P.O. Box : 1161 Ruwi, Postal Code : 112, Sultanate of Oman - Tel. : (+968) 24777500, Fax : (+968) 24777750, http:// www.cbo.gov.om


express
All in One App
كل ما تحتاج في تطبيق واحد




مسقط لخدمات المالية ش م م
Muscat Financial Services LLC

# WARNING OF PATENT INFRINGEMENT

**The American Company Delaware Horizon INC** and its commercial agent in the Sultanate of Oman Muscat Financial Services & Investment LLC, drew the attention of all commercial financial and banking and other institutions to not commit any infringing or continuing to infringe on its patent or any of its elements, registered in most countries, including the United States of America and the Sultanate of Oman, which patent rights are owned by the Delaware Horizon and are related to payment and financial transfer through a cell phone, in order to avoid legal pursuit and legal consequences as per the applicable laws.

For contact and inquiries

info@mfsioman.com
info@delaware-horizon.com

(12) **United States Patent**
Al-Sahli

(10) Patent No.: **US 10,032,156 B2**
(45) Date of Patent: **Jul. 24, 2018**

(54) SYSTEM AND METHOD FOR CONDUCTING FINANCIAL TRANSACTIONS USING A MOBILE DEVICE

(71) Applicant: Mahmoud Amen Mahmoud Al-Sahli, Khimannaga (CA)

(72) Inventor: Mahmoud Amen Mahmoud Al-Sahli, Mississauga (CA)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: 13/875,038

(22) Filed: May 1, 2013

(65) Prior Publication Data
US 2013/0240365 A1 Sep. 19, 2013
Related U.S. Application Data

(63) Continuation of application No. 12/9/8,662, filed as application No. PCT/CA2008/000398 on May 14, 2008.

(30) Foreign Application Priority Data
Mar. 9, 2008 (JO) ............... P-310/2008

(51) Int. Cl.
G06Q 40/00 (2012.01)
G06Q 20/32 (2012.01)
(Continued)

(52) U.S. Cl.
CPC ...... G06Q 30/7279 (2013.01); G06Q 20/1085 (2013.01); G06Q 20/02 (2013.01);
(Continued)

(58) Field of Classification Search
CPC ...... G06Q 40/00; G06Q 20/32; G06Q 20/341; G06Q 20/04; G06Q 20/10; G06Q 40/02; G06Q 40/01; G06Q 40/06
(Continued)

(56) References Cited
U.S. PATENT DOCUMENTS
5,597,864 A 3/1970 Independent et al
6,112,197 A 1/1700 Jansengass ..... 235/400
(Continued)

FOREIGN PATENT DOCUMENTS
WO 2008/056012 A1 6/2008
WO 2008/049393 A1 9/2008
(Continued)

OTHER PUBLICATIONS
Canadian Office Action dated Feb. 19, 2011 in Canadian Application No. 2,716,276.
(Continued)

Primary Examiner — Hai Tran
(74) Attorney, Agent, or Firm — Hayes Soloway PC

(57) **ABSTRACT**

A Subscriber Identity Module (SIM) Chip Bank system and method for enabling users registered in the system to conduct their financial and telecommunication resources from their mobile device over a mobile communications network. The system combines mobile network providers and financial services through the use of SIM chips without the need for modifying the users' mobile devices or SIM chip installed thereon. A SIM Chip Bank System Operator (SCB-O) regulates data flow between users, banks, mobile communications service providers, SIM Chip Automated Teller Machines and SIM Chip Service Providing Machines through a plurality of communications channels. Upon a user connecting to the SCB-O to request a transaction, the SCB-O connects to the appropriate bank to authorize the requested transaction. Upon successful completion, reports are sent back and forth to users confirming the event.

18 Claims, 5 Drawing Sheets



US 10,032,156 B2
Page 1



(51) Int. Cl.
G06Q 20/10 (2012.01)
G06Q 20/40 (2012.01)
G06Q 20/38 (2012.01)

(52) U.S. Cl.
CPC ...... G06Q 20/12 (2013.01); G06Q 20/40 (2013.01); G06Q 20/4014 (2013.01)

(58) Field of Classification Search
USPC ...... 705/35–45
See application file for complete search history.

(56) References Cited
U.S. PATENT DOCUMENTS
2003/0050071 A1 3/2007 Matthew ..... 70/790
2003/0255682 A1* 10/2003 Tamamura ..... 235/382
2008/0011175 A1* 1/2008 Giordano et al

FOREIGN PATENT DOCUMENTS
WO 2000/091179 A1 8/2000
WO WO 2008/049298 * 4/2008 ..... G06Q 20/00
WO 2008/089738 A2 10/2008

OTHER PUBLICATIONS
Canadian Office Action dated Jan. 12, 2013 in Canadian Application No. 2,716,276.
Canadian Office Action dated Oct. 19, 2013 in Canadian Application No. 2,716,276.

العنوان

غلا ـ بوشر

شارع المعرض

مبني  رقم ٢٤٥

جوار شرطة عمان السلطانية

شركة مسقط للخدمات المالية



LEAGA

السُّفارة[؟]

Sultanate of Oman
Central Bank of Oman



سلطنة عمان
البنك المركزي العماني

## وصـــــــل استـــــــلام

درجة المكتومية: <u>عاجل جداً</u>

رقم الرسالة: <u>دق/١٦/١١١/٢٠٢٣</u>     التاريخ: <u>٢٠٢٣/٤/٢٧</u>
الموضوع: <u>الإعلان الصحفي بشأن تحذير المصارف والمؤسسات المالية</u>
موجهة إلى الفاضل / رئيس إدارة شركة مسقط للخدمات المالية     المحترم
المكـــــان: <u>شركة مسقط للخدمات المالية</u>

اسم المستلم: ........هاشم الجابري...................................

تاريخ الاستلام: ..........٢٠٢٣-٠٥-٠٣.............................

إمضاء المستلم: ................................... الختم: ............

